[No. 29298. Department Two. October 28, 1944.]

THE STATE OF WASHINGTON, *Respondent*, v. VICTOR RODRIGUES, *Appellant*.[1]

*John Caughlan*, for appellant.

*Lloyd Shorett* and *John J. Kennett*, for respondent.

BLAKE, J.—The defendant was charged with first-degree assault, and convicted of second. From judgment and sentence on the verdict, he appeals, assigning error (1) in that

[1]Reported in 152 P. (2d) 970.

the court refused a requested instruction on third-degree assault, and (2) in the admission of certain testimony.

*First.* That a fight occurred between the defendant and the complaining witness, one Santos, is undisputed. From the state's evidence, the jury was warranted in believing that, about 6:15 on the morning of October 27, 1943, as Santos was approaching the rear entrance of the apartment house in which the estranged wife of the defendant lived, the defendant sprang from a dark passageway and struck him on the head with a hammer; that Santos, after having been knocked to the pavement and pommeled by the defendant, struggled to his feet and ran down the street— the defendant pursuing with the hammer still in his hand. Santos suffered a fractured skull and other injuries. He was taken to a hospital, where he remained fifty-one days. Meningitis developed and for a week or ten days he was in a critical condition.

Defendant's version of the fight is that he was going to his wife's apartment to return his stepdaughter's coat, which she had left at her grandparents' home (where the defendant lived) a few days before; that, as he got out of his car, Santos approached him, hammer in hand; and that, in the struggle which ensued, he wrenched the hammer from Santos and used it to defend himself, using no more force than was necessary to repel Santos's attack.

We think it is apparent that the defendant was guilty of first- or second-degree assault, or of no crime at all.

██ ██  Under the state's evidence, the jury might well have found that the defendant assaulted Santos with intent to kill him. Under the defendant's own testimony, he was guilty of second-degree assault if the jury declined to accept his plea of self-defense. Rem. Rev. Stat., § 2414 [P. C. § 8759] (3), (4). He willfully—in the sense of intentionally, and not accidently—inflicted "grievous bodily harm" upon Santos; and willfully assaulted him "with a weapon or other instrument or thing likely to produce bodily harm." The plea of self-defense does not serve to mitigate or reduce the degree of an assault. It constitutes a complete justification. The refusal of the court to submit third-degree as-

sault was not error. *State v. McConaghy,* 84 Wash. 168, 146 Pac. 396; *State v. Reynolds,* 94 Wash. 270, 162 Pac. 358; *State v. Shaffer,* 120 Wash. 345, 207 Pac. 229; *State v. Emerson,* 19 Wn. (2d) 700, 144 P. (2d) 262.

■ *Second.* As we have intimated, this case is the outgrowth of "the eternal triangle." As is usual in such cases, the evidence took a wide range in developing the relationship of the principals—Santos, the defendant, and the defendant's wife—over a period of several years. The state called Mrs. Rodrigues to the stand. On direct examination, the state, without objection, developed the subject in considerable detail; and brought out the fact that the day preceding the assault the witness had been granted an interlocutory order of divorce from the defendant, and that, for some time prior thereto, she had been living on Fir street, near Fourteenth, in Seattle, with Nancy, her thirteen year old daughter by a former marriage; that the defendant lived with the witness's parents in West Seattle.

On cross-examination, after covering the subject matter developed on the direct examination, counsel for defendant went into the subject of defendant's relationship with his stepdaughter Nancy. At the outset, counsel for the state objected on the ground that it was not proper cross-examination nor material to the issues. After some colloquy between counsel and the court, the objection was overruled. Counsel for defendant then developed in much detail that defendant had known the child from the time she was a baby; that he had always had much affection for her and great concern for her welfare and education; that the child visited defendant and her grandparents on weekends; that she told her mother "about conversations she had with him" during such visits; that, in the later part of November, the witness forbade further visits by the child at her grandparents' home.

On redirect examination, the following occurred:

Q. Mrs. Rodrigues, I wish you would tell the jury—clearly, so they can hear it—why it was around Thanksgiving you forbade Nancy going to see the defendant any more. A. Well, because I didn't want her up there in that

environment, now, and the satisfaction that he had of attempting to kill Mr. Santos. Q. What did you ascertain concerning the sleeping arrangements of the defendant's home? A. Pardon me? Q. Tell the jury about where the girl was required to sleep when she went over there? A. She slept with the stepfather, in the same room, and the same bed. That is why I didn't want her to go, too. Q. Your daughter has already come into her womanhood, hasn't she, now? A. Yes. Q. And did she ever complain to you about sleeping with Victor?

"MR. CAUGHLAN: That is objected to as wholly immaterial. MR. KENNETT: He brought it all out, why she didn't go there any more. MR. CAUGHLAN: I simply asked her if at any time, prior to the time this attack allegedly took place, she had objected to her going out there. Now, he is asking her whether or not, while the defendant was in jail, she prevented her going out there, because he was in jail from October 27 until December. THE COURT: Objection sustained. MR. KENNETT: May I make my offer of proof? Do you wish it made in the absence of the jury? THE COURT: Are you asking her what some other party told this witness? MR. KENNETT: No; as to the reason why she forbade her daughter from going out there any more,— what she learned from the daughter concerning the sleeping habits of the defendant. THE COURT: Will you read the question, Mr. Reporter?

"A. Yes, she did."

The state called Nancy to the stand. On her direct examination, the following took place:

"Q. When you would go over to the defendant's home, who did you sleep with? A. My father. Q. By your father, you refer to the defendant? A. Yes. Q. When did you last go over there? A. It was some time before Christmas. . . . Q. (By Mr. Kennett) Did you ever make any complaint to your mother about sleeping with the defendant, when you went over to your grandparents? MR. CAUGHLAN: That is objected to as not proper or not a proper part of the State's case, having no bearing upon it, being irrelevant and being an improper question. THE COURT: She may answer. . . . A. Yes. Q. (By Mr. Kennett) When was it that you made the complaint to your mother? A. I don't remember. Q. Pardon? A. I don't remember. I remember that I said it to her one night when I came home from staying up there over night with him. . . . Q.

You can't remember what date that was, when you came back and told your mother that? A. No."

Again, on cross-examination of the defendant, counsel for the state brought to the attention of the jury the fact that the defendant slept with his stepdaughter when she visited him and her grandparents.

As we view it, the prosecutor in these three instances—in the redirect examination of Mrs. Rodrigues, in the direct examination of Nancy, and in the cross-examination of the defendant—injected an issue entirely foreign to the main issue in the case: whether the defendant committed an assault upon Santos.

That the evidence was highly prejudicial, there cannot be the slightest doubt. The prosecutor, however, contends that the error, if any, was invited by counsel for defendant in his cross-examination of Mrs. Rodrigues concerning the objections she had made after the assault to further visits by the child at the home of her grandparents.

There is much substance in this contention in so far as it relates to developing the *fact* that defendant slept with his stepdaughter. To that extent, the redirect examination raised merely an issue of impropriety which most people would view with more or less revulsion. And it is to be noted that counsel for defendant did not object to the question which brought out the *fact*. But he did object when the prosecutor asked the question: "And did she ever complain to you about sleeping with Victor?" The prosecutor contends that the objection came too late; that whatever damage was done occurred when the *fact* was brought out. We are unable to accept this view of the situation. When it was developed that Nancy had complained to her mother, that which stood as a matter of doubtful propriety instantly took on a criminal aspect, for the reasonable implication of the question and answer is that the defendant took indecent liberties with the child. Rem. Rev. Stat. (Sup.), § 2442 [P. C. § 9114].

There was nothing developed in the cross-examination of Mrs. Rodrigues to justify a suspicion of that sort; and, in the direct examination of the child, the same inference was

injected into the case without the slightest justification. Nor was there any basis for bringing it out again on cross-examination of the defendant.

The evidence could have no effect other than to prejudice the defendant before the jury. It had no bearing whatsoever upon the question of his guilt or innocence of the crime charged. Its admission constituted reversible error. See *State v. Arnold*, 130 Wash. 370, 227 Pac. 505; *State v. Devlin*, 145 Wash. 44, 258 Pac. 826; *State v. Tweedy*, 165 Wash. 281, 5 P. (2d) 335.

The judgment is reversed and the cause is remanded, with direction to grant a new trial.

SIMPSON, C. J., BEALS, ROBINSON, and MALLERY, JJ., concur.

December 6, 1944. Petition for rehearing denied.