[No. 12757-1-II.   Division Two.   February 20, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. ALERIC BERGESON, *Appellant*.

*Lane J. Wolfley,* for appellant (appointed counsel for appeal).

*David H. Bruneau, Prosecuting Attorney,* for respondent.

MORGAN, A.C.J. — Aleric Bergeson appeals his conviction for second degree murder. We affirm.

■ The sole issue on appeal is whether Bergeson was entitled to have the jury instructed on the lesser included offense of first degree manslaughter. On that issue, he is entitled to have the evidence taken in the light most favorable to him. *Cf. State v. Speece*, 115 Wn.2d 360, 362, 798 P.2d 294 (1990) (instruction required if there is evidence sufficient to warrant an inference favoring its proponent). Thus, we recite the facts from his point of view.

Bergeson was the caretaker of rural property located west of Port Angeles. He was vaguely acquainted with William Whitten and Patrick Riley.

During the afternoon of October 4, 1988, Whitten and Riley began drinking beer at various taverns in Port Angeles. Late on October 4 or early on October 5, they drove to Bergeson's home. The house was rudimentary, but it had a kind of "family room" with a built-in bar. Bergeson mixed drinks for all three of them, and they chatted and listened to music in the family room.

After a time, Riley became sick from drinking too much. He went outside, vomited, and eventually fell asleep in his car.

In the house, Whitten became increasingly agitated, apparently because of music that Bergeson was playing on the stereo. Bergeson went out to the car and asked Riley to take Whitten away. Riley refused, and Bergeson went back into the house.

When Bergeson reentered the house, he found Whitten standing at one end of the bar, holding a pistol normally kept behind the bar. Bergeson demanded the gun, then physically took possession of it. As Bergeson put it, "I pulled it out of his hands, he let it go. He held onto it at first, then let it go." Bergeson then stepped behind the bar to put the gun back where it belonged. Before he completed that movement, however, Whitten uttered threats and pulled a knife. At this point both men were "pretty inebriated". Whitten was still in front of the bar, opposite its middle and a few

feet away. With Bergeson continuing to hold the gun, Whitten taunted him about whether he was willing to use it. Whitten then attacked with the knife, and Bergeson fired three shots. Two hit Whitten in the forehead; the third went into the wall behind. During the attack, Whitten did not get close enough to grab Bergeson or the gun.

Immediately after being shot, Whitten pitched forward, hit the bar, then fell to the floor. Bergeson felt for a pulse but could find none. Bergeson put a garbage bag over Whitten's head and put the body in a wheelbarrow. He carted the body several hundred feet from the house and buried it. After changing clothes in the house, he went back out to the car, awakened Riley, and told him that Whitten had left on foot. Riley then drove both of them into town.

Later that day, after returning to the house with its owner, Bergeson told the owner what had happened and showed him the "mess". After the owner left, Bergeson cleaned up, including cutting out and removing bloodstained portions of carpet.

Within the next 24 hours, Bergeson told two other friends and his father what had happened. He also told his father that he wanted to turn himself in. Thus, on October 6 he and his father went to the police station, where Bergeson made a statement to the police. Until this time, the police were unaware that there had been a homicide.

After additional investigation, the State filed a charge of second degree murder and the matter proceeded to trial. A pathologist testified that Whitten had suffered two gunshot wounds to the head; that Whitten suffered no stippling or tattooing; and that that indicated the gun was not close to Whitten as it was fired. The pathologist also testified that Whitten's blood alcohol reading of .45 percent would have caused him to be significantly impaired. "He's practically falling down and he is certainly not able to talk or move or react anywhere near as he would if he were sober." At the close of the evidence, Bergeson requested instructions on self-defense and on the lesser included offense of man-

slaughter in the first degree. He did not request instructions on intoxication.

The trial judge instructed on self-defense but declined to instruct on first degree manslaughter. He reasoned that the evidence showed either the intent to kill needed for second degree murder or the justification needed for acquittal, but not the recklessness needed for manslaughter. Bergeson's only contention on appeal is that his proposed manslaughter instructions should have been given.

■ A defendant is entitled to an instruction on a lesser included offense if (1) each element of the lesser offense is a necessary element of the offense charged, and (2) the evidence supports an inference that the lesser crime was committed. *State v. Speece, supra; State v. Fowler,* 114 Wn.2d 59, 67, 785 P.2d 808 (1990), *disapproved on other grounds in State v. Blair,* 117 Wn.2d 479, 487, 816 P.2d 718 (1991); *State v. Workman,* 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). The State concedes that first degree manslaughter is a lesser offense included within second degree murder, *see State v. Jones,* 95 Wn.2d 616, 621, 628 P.2d 472 (1981), so only the second element is in issue in this case.

Regarding the second element, the Supreme Court has said:

> It is not enough that the jury might simply disbelieve the State's evidence. Instead, some evidence must be presented which affirmatively establishes the defendant's theory on the lesser included offense before an instruction will be given.

*Fowler,* 114 Wn.2d at 67. In other words, evidence supporting inferences that the defendant is guilty or not guilty of the charged offense will not support the giving of a lesser included offense instruction. *E.g., State v. Jackson,* 70 Wn.2d 498, 503, 424 P.2d 313 (1967) (evidence showing assault with knife insufficient to support instruction describing simple assault). The test is whether there is evidence supporting an inference that the defendant is guilty of the lesser offense *instead of* the greater one.

■ Bergeson argues that the evidence supports manslaughter rather than murder because it supports an infer-

ence that he intentionally acted in self-defense, but recklessly used more force than was necessary under the circumstances. We agree that the evidence supports that inference, but we disagree that that inference supports the giving of instructions on first degree manslaughter.

The defendant bases his argument on one paragraph from *State v. Jones, supra,* a case in which the Supreme Court reversed because the trial court failed to instruct on first degree manslaughter as a lesser included offense. Appearing in 95 Wn.2d at 622-23, the pertinent paragraph states:

> There were, then, two possible ways the jury could have decided that appellant lacked the intent necessary for a conviction of second degree murder. They could have found either that he was so intoxicated as to be unable to form the intent to kill or, alternatively, that he acted in self-defense, but recklessly or negligently used more force than was necessary to repel the attack.

The quoted paragraph describes the doctrine of imperfect self-defense, though it does not use that label. Self-defense has at least the following elements:[1] (1) At the time of the event the defendant must subjectively believe that he or she is (a) in imminent danger of great personal injury and (b) responding with only that degree of force necessary to repel the danger; and (2) these subjective beliefs must be such that a reasonable person considering only the circumstances known to the defendant at the time would also have entertained them.[2] Under the doctrine of "perfect" self-defense,

---

[1] It has been said that an additional element of self-defense is that the actor must be free from fault in bringing on the difficulty with his adversary. W. LaFave & A. Scott, *Criminal Law* 583 (1972); *see also State v. Dennison,* 54 Wn. App. 577, 580-82, 774 P.2d 1237 (1989), *aff'd,* 115 Wn.2d 609, 801 P.2d 193 (1990). We have no occasion to consider the degree to which that is true.

[2] RCW 9A.16.050(1); *State v. Hughes,* 106 Wn.2d 176, 721 P.2d 902 (1986) (honest, "good faith" belief must be objectively reasonable); *Jones,* 95 Wn.2d at 624 (honest belief enough if reasonable; conduct to be evaluated in light of circumstances then known to defendant); *State v. Wanrow,* 88 Wn.2d 221, 234, 559 P.2d 548 (1977) (relevant circumstances are *all* those known to defendant); *State v. Tyree,* 143 Wash. 313, 316-17, 255 P. 382 (1927) (honest, good faith belief enough if reasonable; amount of force must be reasonable; reasonableness to be

an actor is not guilty of any degree of homicide when both elements are met. RCW 9A.16.050; *State v. Hughes*, 106 Wn.2d 176, 189-90, 721 P.2d 902 (1986); *State v. Rodrigues*, 21 Wn.2d 667, 668-69, 152 P.2d 970 (1944) (assault case); *State v. Brigham*, 52 Wn. App. 208, 210, 758 P.2d 559, *review denied*, 111 Wn.2d 1026 (1988). Under the doctrine of "imperfect" self-defense, an actor is guilty of manslaughter but not murder when the first element is met but the second is not. *Hughes*, 106 Wn.2d at 189. The paragraph from *Jones* describes imperfect self-defense because it appears to authorize a manslaughter verdict for a defendant who subjectively intends to kill in self-defense but recklessly or negligently uses more force than necessary — *i.e.*, more force than objectively reasonable — in order to repel the attack.

After *Jones*, the doctrine of imperfect self-defense was rejected in Washington, *Hughes*, 106 Wn.2d at 188-90; *see also State v. Jeppesen*, 55 Wn. App. 231, 238, 776 P.2d 1372, *review denied*, 113 Wn.2d 1024 (1989), notwithstanding its acceptance elsewhere. *E.g., People v. Flannel*, 25 Cal. 3d 668, 680, 603 P.2d 1, 160 Cal. Rptr. 84 (1979); *State v. Faulkner*, 301 Md. 482, 486, 483 A.2d 759 (1984); *State v. Norris*, 303 N.C. 526, 531-32, 279 S.E.2d 570, 573-74 (1981). In *Hughes*, 106 Wn.2d at 188, our court said:

---

judged from circumstances then known to defendant); *State v. Miller*, 141 Wash. 104, 105, 250 P. 645 (1926) (assault case; otherwise same as *Tyree*); *State v. Bell*, 60 Wn. App. 561, 567, 805 P.2d 815 (good faith belief must be reasonable), *review denied*, 116 Wn.2d 1030 (1991); *State v. Jeppesen*, 55 Wn. App. 231, 238, 776 P.2d 1372 (defendant must have acted as a reasonably prudent person would have done under the circumstances as they appeared to him), *review denied*, 113 Wn.2d 1024 (1989); *State v. Negrin*, 37 Wn. App. 516, 521, 681 P.2d 1287 (imminent danger "prong" must be both honest and reasonable), *review denied*, 102 Wn.2d 1002 (1984); *State v. Dunning*, 8 Wn. App. 340, 342, 506 P.2d 321 (1973) (degree of force must be reasonable; reasonableness judged by circumstances known to defendant); W. LaFave & A. Scott, *Criminal Law* 583 (1972) (stating and organizing elements).

The phrase "considering only the circumstances known to the defendant at the time" is not included in the first element because to do so is unnecessary. The first element deals with the defendant's subjective beliefs, so it is obvious that only what he knew can be considered.

> Washington law does not lessen criminal culpability because someone acts in self-defense based on an honest but unreasonable belief. We decline to adopt the doctrine of so-called "imperfect" self-defense.

Thus, the Washington Supreme Court has disapproved the paragraph from *Jones* that Bergeson relies on,[3] and a Washington defendant is not entitled to manslaughter instructions if the only inferences available from the evidence are that he or she (a) subjectively believed that there was imminent danger of great personal injury; (b) subjectively intended to kill in self-defense; and (c) recklessly or negligently used more force than was objectively reasonable given the circumstances appearing to him or her at the time.

In this case, Bergeson chose to testify, and he described the incident in great detail. He expressly testified that Whitten attacked him with a knife, and that he intended to shoot Whitten in response. Together with other evidence, his testimony showed that when he fired, he and Whitten were not far apart, and two out of three bullets entered Whitten's forehead. Bergeson did not testify that he intended only to scare or disable Whitten, or that his bullets went anywhere other than where he intended.

Viewing this evidence in the light most favorable to Bergeson, it supports inferences that he subjectively believed that he was in imminent danger of great personal injury and that he intended to kill in response. As he argues, it also supports an inference that he used more force than objectively reasonable, given the circumstances as they then appeared to him.[4] Due to Washington's rejection of imperfect self-defense, however, these inferences are insufficient to

---

[3] In any event, the part of the *Jones* paragraph that mentioned self-defense was dictum. *Jones* was decided on the basis of intoxication, not self-defense.

[4] The evidence also supports an inference that Bergeson did not use more force than was objectively reasonable given the circumstances as they appeared to him at the time. That inference, however, was recognized by the trial judge when he agreed to instruct the jury on self-defense, and rejected by the jury when it declined to acquit for self-defense. Thus, the inference presently most favorable to Bergeson, *i.e.*, the one most supportive of his contention regarding manslaughter instructions, is the one that we have stated in the text.

support manslaughter instructions. Instead, the inference needed to support a manslaughter instruction is that *without intent to kill, but with recklessness*, Bergeson caused the death of Whitten. That inference is not reasonably available from the evidence in this case, and the trial court was correct when it declined to instruct on manslaughter.

Affirmed.

ALEXANDER, J., and WORSWICK, J. Pro Tem., concur.

Reconsideration denied April 7, 1992.