FILED
COURT OF APPEALS
DIVISION II

2014 APR -8 AM 8: 53

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43188-2-II |
| Respondent, | |
| v. | |
| FRED CARL DURGELOH, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, J. — Fred Carl Durgeloh appeals his enhanced standard range sentences and jury convictions for two counts of second degree assault while armed with a firearm, two counts of felony harassment with a firearm enhancement, and one count of second degree unlawful possession of a firearm. He argues that the trial court (1) violated his right to due process when it accepted a stipulation to a prior offense without his unequivocal oral assent; (2) denied his right to a fair trial when it refused to give his proposed lesser included instruction on unlawful display of a weapon; and (3) violated RCW 9.94A.701(9)[1] when it imposed a sentence that exceeded the statutory maximum. In a Statement of Additional Grounds (SAG), Durgeloh also asserts that the State failed to present sufficient evidence of second degree assault and unlawful possession and that the police conducted a warrantless search and seizure.

We affirm Durgeloh's convictions and sentences.

---

[1] The legislature amended RCW 9.94A.701 in 2010. LAWS OF 2010, ch. 224, § 5; ch. 267, § 11; LAWS OF 2009, ch. 375, § 5; ch. 28, §10. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

FACTS

I. CRIMES

Fred Carl Durgeloh's caregiver alerted the Cowlitz County Sheriff's Office that Durgeloh could be suicidal. Deputies Ryan Cruser and Kimberly Moore drove to Durgeloh's home to check on him, knocked on the rear door, and announced that they were from the sheriff's office, but no one answered. Through a window, Officer Cruser saw Durgeloh armed with a gun; Cruser told him to "put the gun down." 2 Verbatim Report of Proceedings (VRP) at 115. Instead, Durgeloh came out onto the porch; pointed the gun in the officers' direction; told them he had a gun with a bullet in it; held the gun up higher; pulled the hammer back; and said, "See, now it's cocked. . . . You need to leave." 2 VRP at 165.

Durgeloh returned inside the house, placed a 911 call, and told the dispatcher that the officers were trespassing, to "[g]et them out of here," and, "They will die." 2 VRP at 208. Five minutes later, Durgeloh again called 911 insisting that the officers were trespassing. This time he told the police dispatcher (1) to "[g]et [the officers] out of here"[2]; (2) "If [the officers] walk on my porch, they're going to die"[3]; and (3) to "[t]ell [the officers] to respect their lives" and that "when they walk through the front door, my back porch door, that yes, I do have a loaded .45 and that yes, I'm going to hold it at them." 2 VRP at 212. The officers overheard Durgeloh making these statements to the 911 dispatcher and, after observing Durgeloh point the gun in their direction, requested backup units.

---

[2] 2 VRP at 210.

[3] 2 VRP at 211.

No. 43188-2-II

A Special Weapons And Tactics (SWAT) team arrived. Eventually, police negotiators talked Durgeloh out of his home, unarmed; and the deputies placed him under arrest. Moore obtained a warrant to search the residence. During the search, SWAT officers found "a box of .45 shells that had a few rounds missing from it" and a .45 caliber Ruger semiautomatic handgun in Durgeloh's bed. Clerk's Papers (CP) at 2.

## II. PROCEDURE

The State charged Durgeloh with (1) two counts of second degree assault (Counts 1 and 2), each with a firearm enhancement, for intentionally assaulting officers Cruser and Moore with a handgun, RCW 9A.36.021(1)(c)[4]; (2) unlawful possession of a firearm in the second degree (Count 3), RCW 9.41.040(2)(a)(i)[5]; and (3) two counts of felony harassment, each with a firearm enhancement (Counts 4 and 5), for knowingly threatening to kill officers Cruser and Moore with a handgun. Former RCW 9A.46.020(2)(b) (2003). The trial court ordered Durgeloh to undergo a mental health evaluation to determine his capacity to form an intent to commit the crimes. The mental health examiner concluded that Durgeloh was able to understand his actions and capable of forming "a mental state of intent" to commit the charged crimes. CP at 34.

---

[4] The legislature amended RCW 9A.36.021 in 2011. LAWS OF 2011, ch. 166, § 1. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

[5] The legislature amended RCW 9.41.040 in 2009 and 2011. LAWS OF 2009, ch. 293, § 1; LAWS OF 2011, ch. 193, § 1. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

3

No. 43188-2-II

## A. Trial

At trial, Moore and Cruser testified about the facts already set forth; Deputy Brady Spaulding and Captain Corey David Huffine also testified. The jury heard the audio recordings of Durgeloh's 911 calls, and Durgeloh's live testimony.

Durgeloh, his attorney, and the prosecutor all signed a written stipulation to the existence of the predicate offense underlying the unlawful possession of a firearm charge.[6] A colloquy ensued about Durgeloh's understanding of the stipulation,[7] after which the trial court read it to

---

[6] More specifically, this stipulation provided:

> The State, Defendant's Attorney, and Defendant hereby agree that the following facts shall be stipulated to at trial for consideration on all issues that may be before the court and jury:
>     1. That on or about July 11, 2009, the defendant had previously been convicted of the crime of Violation of a Protection or No Contact Order Restraining the Person – Domestic violence, and that this crime was against a family or household member and occurred after July 1, 1993.

CP at 49.

[7] 2 Verbatim Report of Proceedings at 216-18:

> [TRIAL COURT]: .... Mr. Durgeloh, you've had an opportunity to talk about the stipulation of fact regarding the—a violation of a protection or no-contact order. And that you've been previously convicted of that. And do you have any questions about that?
> MR. DURGELOH: Just that it was my understanding that when we did that, that that was not in effect. And I thought that there was papers showing that, because my concern was that I still—well, I grew up being a hunter and a fisherman and I didn't want to lose my rights to be able to hunt.
> [TRIAL COURT]: Okay. So you understand what this stipulation is saying, is that on July 11th, 2009, you'd been previously convicted of a crime of either no-contact order or violation of a protection order? And that was a domestic violence offense that occurred after July 1st, 1993. Are you agreeing that that's accurate?
> MR. DURGELOH: I—I don't remember, but yes. . . . . .
> [DURGELOH'S COUNSEL]: And Your Honor, just—just for the record[,] the guilty plea form from District Court does reflect that he was advised

4

No. 43188-2-II

the jury. Consistent with this stipulation, Durgeloh did not object when the State moved to admit certified copies of Durgeloh's prior guilty plea, judgment, and sentence.

Nevertheless, Durgeloh moved to dismiss the unlawful possession of a firearm charge, arguing that "the State has not shown the required elements to move forward" because the State was required, but failed, to show that the previous court presiding over Durgeloh's prior misdemeanor conviction had notified him "orally and in writing" that he could not possess a firearm, as required by RCW 9.41.047(1)(a). 2 VRP at 224. The State presented evidence that Durgeloh had signed a plea agreement informing him of this requirement. Ruling that Durgeloh's having received written notice of the consequences of his prior guilty plea was sufficient, the trial court denied his motion to dismiss the firearm possession charge.

Durgeloh then moved to dismiss the two felony harassment charges and their accompanying firearm sentencing enhancements. He argued that because "neither [officer testified] that they thought they were going to be killed," the evidence was insufficient. 2 VRP at 229. The trial court denied the motion, ruling that Durgeloh's statements and actions, combined with Deputies Cruser and Moore's testimonies, showed that the officers had a reasonable fear that Durgeloh would carry out his threats to kill them.

---

of the loss of rights. I think it's perfectly possible that he doesn't remember or recall that at this point, Your Honor, but that is what the record reflects.

. . . .

[STATE]: Well, I don't necessarily agree that's what the record reflects, but—

[TRIAL COURT]: The stipulation is what it is.

[STATE]: That he got convicted.

[DURGELOH'S COUNSEL]: Yes.

5

No. 43188-2-II

Durgeloh testified that, when Moore and Cruser initially approached his residence, "they said that they're the sheriff,"[8] and he realized that they were Cowlitz County Deputy Sheriffs. He also acknowledged that he had made the 911 phone calls.

B. Jury Instructions

Durgeloh proposed a jury instruction on the lesser included offense of unlawfully displaying a weapon,[9] to which the State objected. The trial court denied Durgeloh's request. The trial court gave the jury two other instructions relating to the charge of unlawful possession of a firearm. Jury instruction 13 (elements) provided:

> A person commits the crime of unlawful possession of a firearm in the second degree when he knowingly has a firearm in his possession or control and he has previously been convicted of a Violation of a Protection Order or No-Contact Order restraining the person against a family or household member, which crime occurred on or after July 1, 1993.

CP at 74. Jury instruction 15 ("to convict") provided:

---

[8] 2 VRP at 240.

[9] This proposed lesser included instruction provided:
> To convict the defendant of the crime of unlawfully displaying a weapon, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about July 11, 2009, the defendant displayed a firearm;
> (2) That the defendant exhibited the weapon in a manner, under circumstances, and at a time and place that manifested an intent to intimidate another or warranted alarm for the safety of other persons; and
> (3) That this act occurred in the State of Washington, County of Cowlitz.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 55.

6

> To convict the defendant of the crime of unlawful possession of a firearm in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about July 11, 2009, the defendant knowingly had a firearm in his possession or control;
>
> (2) That the defendant had previously been convicted of violation of a protection order-domestic violence against a family or household member, which crime occurred on or after July 1, 1993; and
>
> (3) That the possession or control of the firearm occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 76.

Durgeloh objected to jury instruction 14, which defined "possession,"[10] and to instruction 15, which provided the elements of unlawful possession of a firearm. He argued that the State had failed to present evidence that the previous court presiding over his prior stipulated misdemeanor conviction had orally apprised him that he was prohibited from possessing firearms. The trial court overruled his objection, ruling that when Durgeloh had signed his prior guilty plea, the written notice of the consequences had provided sufficient notice.

### C. Verdict and Sentence

The jury found Durgeloh guilty of all five counts, as charged. It also returned four special verdicts finding that he had been armed with a firearm when he committed the assaults

---

[10] CP at 76.

7

No. 43188-2-II

and the harassments. The trial court ordered a competency evaluation, which found Durgeloh competent to be sentenced.

The trial court sentenced Durgeloh to 22 months of confinement on both Counts 1 and 2 (second degree assault), 12 months plus one day on Count 3 (firearm possession), and 12 months on Counts 4 and 5 (two felony harassment counts). The trial court added firearm enhancements of 36 months to his sentences for Counts 1 and 2, and 18 months for Counts 4 and 5. The trial court ran the standard sentences concurrently and the enhancements consecutively.[11] During the sentencing hearing, the court engaged in a colloquy about the resultant total number of months of confinement, which the parties and the court agreed would be 120 months.

The trial court did not discuss community custody. The written judgment and sentence, however, included 18 months of community custody in addition to the 120 months of confinement. Durgeloh appeals his convictions and sentences.

ANALYSIS

I. STIPULATION

Durgeloh first argues that the trial court violated his right to due process under both the Washington and federal constitutions when it accepted his stipulation that he had a prior misdemeanor conviction, which thereby relieved the State from proving the predicate offense element of Count 3, unlawful possession of a firearm. Durgeloh contends that, because his

---

[11] *See* CP at 110. RCW 9.94A.533(3)(e) provides: "Notwithstanding any other provision of law, all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements." The legislature amended RCW 9.94A.533 in 2009, 2011, 2012, and 2013. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

response during his colloquy with the trial court was equivocal, his assent to the stipulation was therefore not knowing, intelligent, and voluntary. We disagree. The record shows that Durgeloh waived or abandoned this claim when he signed the stipulation after conferring with his counsel.

The State charged Durgeloh with second degree unlawful possession of a firearm, CP at 4-5, because a previous misdemeanor guilty plea to violation of a domestic violence protection order rendered him ineligible to possess a firearm. At trial, Durgeloh, his defense counsel, and the prosecutor signed a Stipulation of Fact agreeing that Durgeloh had been previously convicted of this predicate offense. The State presented certified copies of this prior guilty plea, judgment, and sentence; and Durgeloh did not object to their admission into evidence.

Durgeloh does not dispute that he pled guilty to this prior predicate offense. Instead, he argues that (1) the trial court here did not engage in a sufficiently detailed colloquy to determine whether he knowingly, voluntarily, and intelligently assented to his stipulation before admitting it into evidence; and (2) as a result, the trial court denied him a fair trial. Durgeloh failed to preserve this claim for appeal and does not meet the preservation exceptions of RAP 2.5(a)(3).[12]

Furthermore, Durgeloh not only failed to object to admission of the stipulation below, but also expressly agreed to and signed the stipulation to the fact of his prior conviction and its prohibiting him from possessing a firearm. This stipulation fulfilled the State's burden of

---

[12] Although Durgeloh cloaks his claim in constitutional terms, actually he is contesting whether he knowingly entered into this factual stipulation, which, according to our Supreme Court, is subject to a lower standard than waivers of constitutional rights: Even in a criminal case, "due process would not require the trial court to ensure that a defendant understands the rights waived by a factual stipulation as long as the stipulation is not tantamount to a guilty plea." *In re Det. of Moore*, 167 Wn.2d 113, 120, 216 P.3d 1015 (2009). The stipulation here was not tantamount to a guilty plea because the State still had to meet its burden to prove the other elements of the unlawful possession of a firearm charge. Thus, under *Moore*, no constitutional right was implicated. 167 Wn.2d at 120.

proving a predicate offense for the charge of unlawful possession of a firearm.[13] The trial court's colloquy with Durgeloh showed that, despite his expressed concerns, he ultimately agreed to the substance and accuracy of the stipulation about his prior guilty plea, the existence of which he does not dispute.[14] Based on both Durgeloh's failure to preserve this claimed error and his stipulation below, we do not further consider this new due process challenge.

## II. REQUESTED LESSER INCLUDED OFFENSE INSTRUCTION

Durgeloh next argues that the trial court violated his right to a fair trial under both article 1, section 3 of the Washington Constitution and the Fourteenth Amendment to the United States Constitution when it refused to give his proposed lesser included jury instruction on unlawful display of a weapon, instead of second degree assault. Durgeloh contends that every second degree assault charged under RCW 9A.36.021(1)(c) necessarily includes the lesser offense of

---

[13] RCW 9.41.040 provides, in part:

> (2)(a) A person . . . is guilty of the crime of unlawful possession of a firearm in the second degree, if the person . . . owns, has in his or her possession, or has in his or her control any firearm:
> (i) After having previously been convicted [of] any of the following crimes when committed by one family or household member against another, committed on or after July 1, 1993: . . . violation of the provisions of a protection order or no contact order.

Durgeloh stipulated to having been convicted of violating a no contact order after July 1, 1993, which fulfilled this element of the unlawful possession of a firearm charge. Durgeloh's prior guilty plea to this conviction included the following provision: "I understand that I may not possess, own, or have under my control any firearm unless my right to do so is restored by a court of record and that I must immediately surrender any concealed pistol license. [Former] RCW 9.41.040 [(2006)]." Ex. 13.

[14] Furthermore, Durgeloh cites no authority for his implicit argument that, in addition to accepting his written assent, the trial court was required to obtain his personal oral acquiescence to the stipulation that he signed. And the certified copies of Durgeloh's guilty plea in the prior predicate offense also contained Durgeloh's written acknowledgement that he was prohibited from possessing a firearm, further demonstrating that Durgeloh understood the consequences of his prior conviction.

unlawful display of a firearm and, therefore, unlawful display is legally a lesser included offense to second degree assault under RCW 9A.36.021(1)(c).[15] This argument fails.

## A. Standard of Review

We review a claim of denial of constitutional rights de novo. *State v. Stone*, 165 Wn. App. 796, 810, 268 P.3d 226 (2012) (citing *State v. Drum*, 168 Wn.2d 23, 31, 225 P.3d 237 (2010)). A defendant is entitled to a jury instruction on a lesser included offense if (1) each of the elements of the lesser offense is a necessary element of the offense charged ("legal prong"); and (2) the evidence in the case supports an inference that the defendant committed the lesser crime to the exclusion of the greater crime ("factual prong"). *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978) (citations omitted); *see State v. Berlin*, 133 Wn.2d 541, 546-47, 947 P.2d 700 (1997). "We review de novo the legal prong of a request for a jury instruction on a lesser included offense." *State v. LaPlant*, 157 Wn. App. 685, 687, 239 P.3d 366 (2010) (citing *State v. Walker*, 136 Wn.2d 767, 772, 966 P.2d 883 (1998)). But we review "the factual prong of a request for a jury instruction on a lesser included offense" for abuse of discretion. *LaPlant*, 157 Wn. App. at 687 (citing *Walker*, 136 Wn.2d at 771-72).

Here, the State agrees that unlawful display of a firearm meets the first, legal prong of the *Workman* test—that each element of unlawful weapon display is a necessary element of second degree assault with a firearm. Thus, we address only the second, factual prong of the test.

---

[15] *See* Br. of Appellant at 19 (citing *State v. Fernandez-Medina*, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000)).

## B. Unlawful Display of a Weapon

The State charged Durgeloh with two counts of second degree assault under RCW 9A.36.021(1)(c) based on his having pointed a loaded handgun at two officers. This statute requires the State to prove that Durgeloh used a deadly weapon to "'put[] another in *apprehension of harm.*'"[16] *State v. Byrd*, 125 Wn.2d 707, 712, 887 P.2d 396 (1995) (emphasis added) (quoting *State v. Frazier*, 81 Wn.2d 628, 631, 503 P.2d 1073 (1972)).

In contrast, RCW 9.41.270, which defines the lesser charge of unlawful display of a weapon, provides, in part:

(1) It shall be unlawful for any person to carry, exhibit, display, or draw any firearm . . . or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.
(2) Any person violating the provisions of subsection (1) above shall be guilty of a gross misdemeanor. . . .
[. . . .]
(3) Subsection (1) of this section shall not apply to or affect the following:
(a) Any act committed by a person while in his or her place of abode or fixed place of business.

Unlawful display of a deadly weapon would have required the State to prove only that Durgeloh displayed a firearm in a manner that "manifest[ed] an intent to *intimidate* another or that *warrant[ed] alarm* for the safety of other persons." RCW 9.41.270(1) (emphasis added).

The State argues that (1) the second, factual prong of the *Workman* test is not met here because the evidence does not raise an inference that *only* the lesser included/inferior degree

---

[16] RCW 9A.36.021(1)(c) provides:
(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
. . . .
(c) Assaults another with a deadly weapon[.]

offense was committed to the exclusion of the charged offense, as *Fernandez-Medina*, 141 Wn.2d at 455 requires; and (2) the evidence does not support such an inference here. We agree with the State.

Under the *Workman* test's factual prong, Durgeloh must show that the evidence "support[s] an inference that the lesser offense was committed *instead* of the greater offense." *State v. Karp*, 69 Wn. App. 369, 376, 848 P.2d 1304 (1993) (citing *State v. Bergeson*, 64 Wn. App. 366, 369, 824 P.2d 515 (1992)). The evidence here does not raise an inference that Durgeloh committed unlawful display of a weapon instead of second degree assault under RCW 9A.36.021(1)(c). Durgeloh did not merely display a weapon; he intentionally pointed his loaded handgun at the officers and threatened to kill them. Comparing the statutory descriptions of these two crimes, we note that the lesser weapon display involves only "intent to intimidate" on the part of the actor or "alarm" for personal safety, but second degree assault requires putting another in actual "apprehension" of harm, not mere "alarm." *Compare* RCW 9.41.270(1) and RCW 9A.36.021(1)(c), respectively.

Furthermore, because Durgeloh threatened the officers "at his place of abode," he cannot be guilty of unlawful display of a weapon because unlawful display of a firearm does not apply to "[a]ny act committed by a person while in his or her place of abode." RCW 9.41.270(3)(a). At trial, the State did not contest that Durgeloh was on his porch, an area "[p]lainly open to the public." 3 VRP at 268. Instead, the State asserted, and the trial court agreed[17], that Durgeloh was in his "'place of abode'" and, thus, unlawful display of a firearm could not be a lesser

---

[17] Relying primarily on *State v. Haley*, 35 Wn. App. 96, 98, 665 P.2d 1375 (1983), the trial court ruled that the purpose of RCW 9.41.270(3)(a) was to promote the public's sense of safety and expectation of privacy in the home and made the following findings: (1) that Durgeloh's porch

13

included offense of second degree assault under the facts here. Br. of Resp't at 9 (quoting RCW 9.41.270(3)(a)).

We hold, therefore, that (1) the facts do not support that Durgeloh committed *only* unlawful display of a firearm; (2) thus, the requested instruction here did not meet the first *Workman* test prong; and (3) the trial court did not err in refusing to give his requested lesser included instruction.

### III. SENTENCING

Durgeloh next argues that (1) his sentences for second degree assault with firearm enhancements, felony harassment with firearm enhancements, and unlawful possession of a firearm exceeded the RCW 9A.20.021(1)(b) 120-month statutory maximum because the trial court imposed 120 months of total confinement, followed by 18 months of community custody; and (2) RCW 9.94A.701(9) required the trial court to reduce his community custody so that the total of community custody and period of confinement do not exceed the statutory maximum. Durgeloh mischaracterizes the trial court's low-end standard-range confinement sentences, none of which come close to the applicable statutory maximums.

Generally, a standard range sentence is not appealable. RCW 9.94A.585(1); *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003). Nevertheless, we review de novo the trial a trial court's sentencing determination "for the correction of legal errors or abuses of discretion."

---

was "not an area exposed to the public"; (2) that the porch was "attached to the home" "about a hundred yards off the main roadway," with "lots of trees"; and (3) that "the deck where the actions occurred . . . were . . . in the place of abode." 3 VRP at 273, 274, 275, 277. For these reasons, the trial court refused Durgeloh's request to instruct on the lesser included offense of unlawful display of a firearm.

14

*Williams*, 149 Wn.2d at 147. Because Durgeloh asserts sentencing errors, we review the sentences for legal error. We find none.

The trial court sentenced Durgeloh as follows:

Counts 1 and 2: 22 months of confinement for each of the two second degree assault convictions, the low end of the standard sentence range for these class B felonies, with an additional 36-month firearm sentence enhancement for each count.

Count 3: 12 months and one day of confinement for the unlawful firearm possession conviction, the low end of the standard sentence range for this class C felony.

Counts 4 and 5: 12 months of confinement for each of the two felony harassment convictions, also the low end of the standard sentence range for these class C felonies, with an additional 18-month firearm sentence enhancement for each count. The trial court ran all the sentences for the underlying crimes concurrently; and, as statutorily required, it ran the firearm sentencing enhancements consecutively to each corresponding underlying sentence and to each other.[18] The trial court also imposed 18 months of community custody on counts 1 and 2.

We agree with Durgeloh that (1) RCW 9A.20.021(1)(b) establishes a 120-month maximum sentence for class B felonies such as second degree assault; and (2) if an offender's

---

[18] Although not an issue in this appeal, we note that during the sentencing hearing, the trial court mistakenly said that the 4 firearm enhancements totaled 98 months of confinement. *See* 3 VRP at 403-04. Although defense counsel correctly noted that these enhancements totaled 108 months, the prosecutor said that the court's 98-month calculation was correct; ultimately all agreed to this 98-month total. *See* 3 VRP at 403-04. When the trial court added this 98-month enhancement total to the longest standard range sentence for the underlying crimes, 22 months, it calculated a total confinement of 120 months and entered it on the judgment and sentence form in the allocated spot on page 6. The correct total, however, should have been 130 months and a day of confinement. Although neither party seeks relief from this apparently inadvertent addition error, they may wish to ask the trial court to correct this scrivener's error after we mandate the case.

standard range term of confinement for a class B felony combined with the offender's later term of community custody exceeds this 120-month statutory maximum, the trial court must reduce the term of community custody to stay within the 120-month maximum.[19] But we disagree with Durgeloh that the trial court exceeded the applicable statutory maximum here.

We evaluate the maximum sentence for each count separately. *State v. Thomas*, 150 Wn.2d 666, 669-74, 80 P.3d 168 (2003). None of Durgeloh's individual sentences approach, let alone exceed, their applicable statutory maximums (not even with their respective firearm enhancements running consecutively to the sentences for the underlying crimes): Durgeloh's longest sentences (for counts 1 and 2, second degree assault) each include 22-month low-end standard-range sentences, with an additional 36-months for the firearm enhancement; these resultant concurrent totals of 58 months of confinement fall far below the RCW 9A.20.021 statutory 120-month maximum for these class B felonies. Thus, when the trial court appended the 18-month community custody term to Counts 1 and 2, the combined terms of confinement and community custody still fell well below the 120-month statutory maximum: 40 months without the firearm enhancements and 76 months even with the enhancements. Durgeloh's challenges to his standard range sentences fail.

IV. STATEMENT OF ADDITIONAL GROUNDS: SUFFICIENCY OF THE EVIDENCE

In his SAG, Durgeloh asserts two additional grounds for relief. He first asserts that the State did not prove all the elements of second degree assault with a deadly weapon. Second, he asserts that the State did not prove all the elements of felony harassment, RCW 9A.46.020(2)(b),

---

[19] *See* Br. of Appellant at 23-24 (citing RCW 9.94A.701(9) and *State v. Boyd*, 174 Wn.2d 470, 472-73, 275 P.3d 321 (2012)).

because the State failed to present sufficient evidence that his threat to kill was unlawful. Neither claim merits reversal of his convictions.

A. Standard of Review

When determining whether evidence is sufficient to support a conviction, we review "the evidence in the light most favorable to the State" to determine whether "any rational trier of fact could have found [the defendant] guilt[y] beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We must draw "all reasonable inferences from the evidence . . . in favor of the State" and interpret them "most strongly against the defendant." *Salinas*, 119 Wn.2d at 201. We defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004) (citing *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81 (1985)).[20]

B. Second Degree Assault

Durgeloh is correct that second degree assault requires specific intent to create reasonable fear and apprehension of bodily injury. He contends that, because both deputies stated that Durgeloh could not see them, (1) he was not pointing the gun at anyone; and (2) therefore, he could not have had a specific intent to create reasonable fear and apprehension of bodily injury. Durgeloh cites *State v. Eastmond*, 129 Wn.2d 497, 919 P.2d 577 (1996), *overruled on other grounds by State v. Brown*, 147 Wn.2d 330, 340, 58 P.3d 889 (2002), for the proposition that a jury may infer specific intent to create fear from the defendant's pointing a gun at a victim.

---

[20] *Abrogated in part on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

Reviewing the evidence in the light most favorable to the State, *Salinas*, 119 Wn.2d at 201, we reject Durgeloh's assertion. First, there is no authority to support Durgeloh's implicit assertion that the State was required to prove that he pointed the gun directly at the officers in order to prove second degree assault with a deadly weapon. *Eastmond* stands for the proposition that pointing a gun at a victim is but one way for a jury to infer specific intent; it is not the only way. *Eastmond*, 129 Wn.2d at 500. Intent "'can be inferred as a logical probability from all the facts and circumstances.'" *State v. Yarbrough*, 151 Wn. App. 66, 87, 210 P.3d 1029 (2009) (quoting *State v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 (1994)).

Second, the evidence was sufficient for the jury to conclude that he had the requisite specific intent, based on his repeated statements to the 911 dispatcher that "[the deputies] will die" and that he would shoot them, statements that the deputies overheard. 2 VRP at 128. Durgeloh's statements to the 911 dispatcher and to the officers were direct evidence of his clear intent to threaten the officers with death if they did not leave his property.

## C. Felony Harassment

Citing RCW 9A.16.020, Durgeloh asserts that his threat to use force against the officers was lawful. This statute provides, in part:

> The use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases:
> . . . .
> (3) Whenever used by a party about to be injured . . . in preventing or attempting to prevent an offense against his or her person, or a malicious trespass, or other malicious interference with real or personal property lawfully in his or her possession.

RCW 9A.16.020.

Durgeloh first asserts that he did not know that the persons in whose direction he was pointing his gun were law enforcement officers. He contends that "the officers did not do a good

enough job of identifying [themselves], they parked [their] cars out of sight and hid[] behind Mr. Durgeloh's truck and car. At no time could Mr. Durgeloh have seen the officers or have known that they for sure were officers." SAG at 4. The evidence clearly counters this assertion. The jury could infer Durgeloh's knowledge that the individuals in his yard were police officers from (1) his first 911 call, demanding that the dispatcher remove the officers from his property or else he would shoot them; and (2) his second 911 call, which he began by telling the dispatcher, "Get the cops out of my yard now. They have no right to be in my yard. I never called them." 2 VRP at 210.

In addition, the officers testified that they drove marked police cars up Durgeloh's driveway, parked them in front of his house, and identified themselves as sheriff's deputies. We do not question the jury's apparent finding that the officers credibly testified to these facts. We hold, therefore, that the jury had a reasonable basis for finding that Durgeloh knew the individuals on his property were police officers.

Nor does Durgeloh succeed in showing that his display of force against the officers was lawful. Our Supreme Court has held,

> [A]lthough a person who is being unlawfully arrested has a right . . . to use reasonable and proportional force to resist an attempt to inflict injury on him or her during the course of an arrest, that person may not use force against the arresting officers if he or she is faced only with a loss of freedom.

*State v. Valentine*, 132 Wn.2d 1, 21, 935 P.2d 1294 (1997). Furthermore, "a person cannot respond with criminal conduct," even to illegal police behavior. *State v. Mann*, 157 Wn. App. 428, 438, 237 P.3d 966 (2010) (citing *Valentine*, 132 Wn.2d at 21). At the time of the incident here, there was no suggestion that the officers were going to arrest Durgeloh or to harm him in

any way; on the contrary, they arrived to conduct a "welfare/suicidal check" in response to Durgeloh's caretaker's call for assistance. 2 VRP at 106.

Durgeloh has not demonstrated that his threat to use force was lawful. We hold, therefore, that RCW 9A.16.020 does not provide Durgeloh with a defense to his threat to use force against Deputies Moore and Cruser.

### D. Suppression of Firearm Evidence

In his "Supplemental" SAG, filed on May 23, 2013, Durgeloh asks us to find that "the gun taken from [his] house [without] a warrant to be the fruit of the poisonous tree." Suppl. SAG at 6. We do not consider this claim because he filed it too late and without court permission or additional extension beyond the original February 4, 2013 extension authorized by our court clerk. Because this filing does not comply with RAP 10.10, we do not further address it.

We affirm Durgeloh's convictions and sentences.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Worswick, C.J.

Penoyar, J.P.T.

20