IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31936-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM LEE FULTZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. – William Lee Fultz appeals his conviction for first degree burglary, first degree robbery, and two counts of second degree assault, all with deadly weapon enhancements. He contends insufficient evidence shows he was an accomplice in the burglary and robbery convictions. Regarding his assault convictions, Mr. Fultz contends (1) the State failed to disprove self-defense beyond a reasonable doubt and (2) the State failed to show he was an accomplice to one of the assaults. Because the evidence sufficiently supports all convictions, we affirm.

FACTS

On April 4, 2013, Tamara Knight resided with her adult son, Nicholas Knight, in Deer Park; Michael Mendoza and two others were present. Ms. Knight wanted to sell her Ford Bronco for $500. A woman, Donna, had paid $140 as a down payment. Ms. Knight gave Donna five days to pay the balance. When Donna failed to pay, Ms. Knight

sold the Bronco to someone else. Around 11:00 p.m., Donna returned to Ms. Knight's home. Two men, Jason Koch and Mr. Fultz, accompanied a "real mad" Donna. Report of Proceedings (RP) at 56. Ms. Knight refunded Donna the $140, but when Donna grabbed the money, it was accidentally ripped in half. Ms. Knight told Donna to leave. As she left, Donna told Mr. Fultz to "take care of it." RP at 57.

Around 3:00 a.m. the next morning, Robert Moody, a drug dealer and debt collector, acting at the behest of an unnamed female friend, picked up two male passengers and drove to Ms. Knight's residence. Mr. Moody parked his car a half block away from Ms. Knight's house, grabbed a baseball bat he used for persuasion, and headed toward the house with the other men. Mr. Moody knocked on the door and entered the house uninvited. He immediately confronted the people in the residence about the money owed to Donna and admitted at trial to hitting two people (Mr. Mendoza and Mr. Knight) with the bat and taking a PlayStation before retreating.

Ms. Knight and her son identified the two men with Mr. Moody as Mr. Koch and Mr. Fultz. When Mr. Moody knocked, Mr. Fultz told Ms. Knight "to sit the 'F' down." RP at 58. Mr. Koch then pulled her outside the house just as Mr. Moody, baseball bat in hand, entered the house. As she was being pulled out the door, Mr. Knight jumped out the door and attacked Mr. Fultz. Mr. Knight "had a feeling" a fight was about to occur because "normally people don't show up at my house at three o'clock in the morning." RP at 80. While wrestling with Mr. Fultz, Mr. Knight was hit in the back of the head from behind. Ms. Knight ripped Mr. Fultz' shirt in her attempt to get Mr. Fultz off her son.

2

While Mr. Fultz was fighting with the Knights, Mr. Moody hit two people with his bat, grabbed a PlayStation, and ran. The three men left the scene in a white sport utility vehicle (SUV).

Deputies Damon Anderberg and Ryan Truman responded to the Knights' house. They advised Washington State Patrol to be on the lookout for a white SUV. The deputies noted Mr. Knight had abrasions on his upper body. Mr. Mendoza told the deputies he had been hit with a bat.

The deputies heard a white SUV had been stopped at a nearby gas station; its occupants were Mr. Moody, Mr. Koch, Mr. Fultz, and a female. Deputy Truman went to the gas station, where he talked with Mr. Fultz. Mr. Fultz stated he and Mr. Koch were assaulted when they went to the Knights' house to retrieve a battery. Mr. Fultz was unsure if 3:00 a.m. was a normal time to retrieve a battery. According to Mr. Fultz, no one entered the house; instead, "four guys came out and beat him up." RP at 131. Someone hit him on the back of the head with a two-by-four, and someone ripped his shirt while pinning him to the ground. He denied any knowledge of a PlayStation. Inspection of the SUV revealed two bats and a PlayStation; the PlayStation's serial number matched the serial number of the PlayStation taken from Mr. Knight.

The State charged Mr. Fultz with first degree burglary, first degree robbery, and two counts of second degree assault (Mr. Mendoza and Mr. Knight). At trial, Ms. Knight and her son testified consistently with the above facts. Mr. Moody, by then a convicted prisoner concerning these events, reluctantly related he entered Ms. Knight's home

3

without permission and struck two men with his bat but would not give names for the other participants. Mr. Fultz did not testify. The court instructed the jury on accomplice liability and self-defense. The jury found Mr. Fultz guilty as charged. Mr. Fultz appealed his convictions.

## ANALYSIS

The issue is whether sufficient evidence supports Mr. Fultz' first degree burglary, first degree robbery, and two second degree assault convictions. Regarding the burglary and robbery convictions, Mr. Fultz contends the State failed to prove he was an accomplice. Regarding the assault convictions, Mr. Fultz contends the State failed to disprove self-defense beyond a reasonable doubt.

Evidence is sufficient to support a guilty finding if "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). An evidence sufficiency challenge "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the jury's assessment of witness credibility and evidence weight. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

"Accomplice liability is principal liability." *State v. Toomey*, 38 Wn. App. 831, 840, 690 P.2d 1175 (1984). "[A]n individual is guilty as an accomplice if he . . . 'solicits,

4

commands, encourages, or requests' another person to commit a crime or aids in its planning or commission, knowing that his . . . act will promote or facilitate the commission of the crime." *State v. McDaniel*, 155 Wn. App. 829, 863, 230 P.3d 245 (2010) (quoting RCW 9A.08.020(3)). Mere presence at the crime scene and assent are not enough to prove accomplice liability. *Id.* The State has to prove "the defendant was ready to assist in the crime." *State v. Luna*, 71 Wn. App. 755, 759, 862 P.2d 620 (1993); *see McDaniel*, 155 Wn. App. at 864.

An individual is guilty of first degree burglary when he enters or remains unlawfully in a building with the intent to commit a crime therein and, either inside or while fleeing, he or another participant was armed with a deadly weapon or assaulted someone. RCW 9A.52.020. "Armed" means the "weapon is readily available and accessible for use." *State v. Chiariello*, 66 Wn. App. 241, 243, 831 P.2d 1119 (1992). A "'deadly weapon'" includes a weapon "which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6).

An individual is guilty of first degree robbery if, "[i]n the commission of a robbery or immediate flight therefrom, he (i) [i]s armed with a deadly weapon; or (ii) [d]isplays what appears to be a . . . deadly weapon; or (iii) [i]nflicts bodily injury." RCW 9A.56.200(1). Robbery is defined as unlawfully taking "personal property from the person of another or in his . . . presence against his . . . will by the use of immediate

5

force, violence, or fear of injury to that person or his . . . property or the person or property of anyone." RCW 9A.56.190.

Looking at the evidence in the light most favorable to the State, sufficient evidence supports Mr. Fultz' burglary and robbery convictions. The facts give rise to several reasonable inferences, all of which support the finding that Mr. Fultz acted as an accomplice. First, Mr. Fultz knew Donna received her money, but he returned to Ms. Knight's house early in the morning to retrieve a battery as further repayment. Given Donna's command to Mr. Fultz to "take care of it," the jury could reasonably infer Mr. Fultz' return was for some nefarious purpose. RP at 57. This inference is buttressed by facts showing Mr. Moody parked the car away from the house; the jury could reasonably infer Mr. Moody, Mr. Fultz, and Mr. Koch wanted to surprise the occupants of the house and/or wished to remain unseen. Second, given Mr. Fultz' tersely worded command to Ms. Knight to sit down, it is reasonable to infer he was there to provide support to Mr. Moody. The jury could reasonably infer Mr. Fultz was present to assist Mr. Moody in robbing the Knights, either by actually helping with the robbery or by serving as a distraction. Third, Mr. Fultz accompanied Mr. Moody, who visibly carried a baseball bat with him to Ms. Knight's front door. It is reasonable to think Mr. Fultz knew Mr. Moody would use the bat if need be, and his acquiescence to the presence of the bat could be seen as encouragement to use it. Moreover, the jury apparently gave the Knights' testimony more weight and found it more credible than the statements Mr. Fultz made to

the police. We do not weigh evidence or decide witness credibility. Given the above, a rational trier of fact could find that Mr. Fultz acted as an accomplice.

Next, a person is guilty of second degree assault if he or she assaults another with a deadly weapon. RCW 9A.36.021(1)(c). Self-defense, if successful, "constitutes a complete justification" to the crime. *State v. Rodrigues*, 21 Wn.2d 667, 668, 152 P.2d 970 (1944). Where the defendant is the precipitating aggressor, self-defense is not available as a defense. *State v. Currie*, 74 Wn.2d 197, 198-99, 443 P.2d 808 (1968).

The evidence viewed most favorably for the State sufficiently supports Mr. Fultz' second degree assault convictions concerning Mr. Knight and Mr. Mendoza. Mr. Fultz, who had been present earlier in the evening when Ms. Knight refunded Donna's money, returned to Ms. Knight's house for that same purpose. Two other men accompanied Mr. Fultz to Ms. Knight's door at 3:00 a.m. One of the men with Mr. Fultz, Mr. Moody, wielded a baseball bat for "the purposes of persuasion"; he eventually used that bat to hit two people. RP at 151. Mr. Moody attempted to force Ms. Knight's door open. Ms. Knight was told by Mr. Fultz "to sit the 'F' down" before being physically pulled from the house. RP at 58. The jury could reasonably infer Mr. Fultz was the first aggressor in this situation. As Mr. Knight stated, "normally people don't show up at my house at three o'clock in the morning" unless they are looking for trouble. RP at 80. Ultimately, as seen with the burglary and robbery convictions, the jury found the Knights' version of events more credible. An accomplice "runs the risk of having the [principal] exceed the scope of the preplanned illegality." *State v. Davis*, 101 Wn.2d 654, 658, 682 P.2d 883

7

No. 31936-9-III
*State v. Fultz*

(1984). Sufficient evidence exists to support the theory that Mr. Fultz was an accomplice; his conviction for second degree assault against Mr. Mendoza should not be dismissed.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

WE CONCUR:

Siddoway, C.J.

Korsmo, J.

8