113 P.3d 523 (2005)
STATE of Washington, Respondent,
v.
Anthony Bruce ALLEN, aka Jerry Lee Shave, Appellant.
No. 30727-8-II.
Court of Appeals of Washington, Division 2.
June 7, 2005.
*524 John A. Hays, Attorney at Law, Longview, WA, for Appellant.
Philip A. Meyers, Attorney at Law, Vancouver, WA, for Respondent.
MORGAN, J.
¶ 1 Anthony Bruce Allen appeals convictions and exceptional sentences for three counts of burglary and one count of attempted burglary. He claims (1) that the trial court erred by refusing to give a lesser included instruction on criminal trespass; (2) that his trial attorney provided ineffective assistance; and (3) that the trial court erred by imposing exceptional sentences. We affirm the convictions but remand for resentencing.
¶ 2 In September 2002, the Holland Corporation owned a building on Main Street in Vancouver, Washington. It had formerly used the northernmost part of the building as a restaurant. It leased other parts of the building to KOP Travel, the Service Corps of Retired Executives (SCORE), and Bill Marshall Auto Sales.
¶ 3 After hours on September 23 24, 2002, a Holland employee suspected that someone might have broken into the building. When the police arrived outside, they observed that one or more of the building's exterior doors had been damaged, that two of its exterior lights were not operating, and that a window into Bill Marshall Auto Sales had been removed from its track. When the police entered, they found a large hole in the wall between Marshall's restroom and KOP's offices, heard pounding inside the building, and saw that a door into SCORE's office had been damaged. Aided by a police dog, they discovered Allen inside SCORE's office, covered with sheetrock dust and in possession of a crowbar and sledgehammer.
¶ 4 On November 7, 2002, the State charged Allen with three counts of second degree burglary and one count of attempted second degree burglary. The State alleged in Count I that Allen had burglarized SCORE with a deadly weapon (the crowbar); in Count II, that Allen had attempted to burglarize the former restaurant; in Count III, that Allen had burglarized Bill Marshall Auto Sales; and in Count IV, that Allen had burglarized KOP Travel.
¶ 5 During a jury trial the following July, William Marshall testified that someone had disturbed his desk and dumped out several drawers. John McConnel, SCORE's chairman, described the damage to SCORE. While being cross-examined by defense counsel, McConnel also said that $44 had been taken from a cash box.
Q. And to your knowledge you can't identify anything else in terms of destruction, then?
A. Not in terms of destruction.

*525 I was told by one of my counselors that there was $28I'm sorry, $44 taken out of the cash box
Q. Okay.
A.  cash.
Q. But you don't have personal knowledge of that; is that correct?
A. Other than what I was told, and he was in charge of it.
Q. Okay. And so you don't have personal knowledge.
A. Not in this case, no.[[1]]
Rather than moving to strike, defense counsel later showed that Allen did not have any money on him at the time of his arrest.
¶ 6 Allen requested a lesser-included instruction on first degree criminal trespass. The trial court denied the instruction, believing that the facts did not support it.
¶ 7 On July 24, 2003, the jury returned a verdict of guilty on each count. It also found that Allen had not been armed with a deadly weapon during the commission of Count I.
¶ 8 On August 1, 2003, the trial court held a sentencing hearing. It found that Counts I and IV were based on the same criminal conduct.[2] It found that Allen had 16 prior offense points and 4 current offense points,[3] and thus an offender score of "9 or more" within the meaning of RCW 9.94A.510. It found that standard-range sentences would be 51 to 68 months on each of Counts I, III, and IV, and 38.25 to 51 months on Count II, all to run concurrently for a total sentence of 68 months.[4] Acting without a jury, the trial court imposed on Count I a concurrent standard-range sentence of 60 months; on Count II, a concurrent exceptional sentence of 60 months; on Count III, a consecutive exceptional[5] sentence of 60 months; and on Count IV, a concurrent standard-range sentence of 60 months. Because of Count III being consecutive, the total sentence was 120 months. The court did not enter written findings of fact, although it orally relied on Allen's "rapid recidivism"[6] and "high [offender] score."[7]
¶ 9 On August 4, 2003, Allen filed this appeal. Almost eight months later, on March 30, 2004,[8] the trial court entered written findings in support of its exceptional sentence. It found that a standard range sentence would result in one or more of the current offenses not being punished, because Allen's offender score was 20. It also found that Allen had been released from a year-long prison sentence just 27 days before his current offenses, and thus had demonstrated "flagrant disdain for the law and property rights of others."[9] In short, the court based its exceptional sentence on "free crimes" and "rapid recidivism."

I.
¶ 10 Allen argues that the trial court erred by declining to instruct on first degree trespass as a lesser included offense. A defendant is entitled to a lesser included offense instruction if (1) each element of the lesser offense is a necessary element of the charged offense ("the legal prong"), and (2) taking the evidence in the light most favorable to him or her, a jury could find that he or she committed the lesser offense instead of the charged offense ("the factual prong").[10] The legal prong is not in question here, as the parties agree that each element of first degree criminal trespass is a necessary element *526 of burglary.[11] Hence, we limit our inquiry to whether a jury taking the evidence in the light most favorable to Allen could find that he committed first degree trespass instead of burglary (or, in alternative terms, that he knowingly entered the building unlawfully but without an intent to commit a crime therein).[12]
¶ 11 Taken in the light most favorable to Allen, the evidence shows that someone damaged three outside doors; disconnected two outside lights by climbing onto the roof and standing on the eave; removed a window pane to gain entry into one business; and smashed a hole through the bathroom wall to gain entry into an adjoining business. The person rummaged through Bill Marshall Auto Sales, dumping the contents of drawers on the floor. Allen was the only person found inside, he had a sledgehammer and crowbar, and he was covered with sheetrock dust. A jury could not find that whoever entered the building did so without an intent to commit a crime therein, and the trial court did not err by refusing to instruct on first degree criminal trespass.

II.
¶ 12 Allen argues that defense counsel rendered ineffective assistance by not objecting or moving to strike the hearsay by which McConnel asserted to the jury that $44 had been taken. To establish ineffective assistance, Allen must show deficient performance and resulting prejudice.[13] Performance is not deficient if there is a tactical reason for it,[14] and it is not prejudicial unless "the result of the proceeding would have been different."[15]
¶ 13 This record does not show either deficient performance or resulting prejudice. Allen's counsel had a tactical reason for not objecting to McConnel's hearsay, for she later attempted to create reasonable doubt by showing that Allen did not have any money on him when he was arrested. The evidence of Allen's guilt was overwhelming, and the trial's outcome would not have been different if an objection had been made and sustained. We conclude that Allen has not shown ineffective assistance.

III.
¶ 14 Citing Apprendi v. New Jersey[16] and Blakely v. Washington,[17] Allen argues that the trial court erred by imposing exceptional sentences. The State denies error, claiming that a jury need not find prior convictions and that Allen's exceptional sentence was based on such convictions. The State also argues that any error was waived or harmless.
¶ 15 In Apprendi, the United States Supreme Court construed the Sixth Amendment's guarantee of a jury trial; it held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[18] In Blakely, the United States Supreme Court clarified Apprendi; it held that the "prescribed statutory maximum" was "not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."[19] In sum, the United States Supreme *527 Court held that with the possible exception of prior convictions,[20] a defendant has a Sixth Amendment right to have a jury find each fact needed to support the sentence that he actually must serve.[21]
¶ 16 In State v. Hughes, the Washington Supreme Court considered whether Apprendi and Blakely's possible exception for prior convictions allow a trial court to impose an exceptional sentence under RCW 9.94A.535(2)(i). RCW 9.94A.535(2)(i) permits a trial court to exceed the standard range when "[t]he operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly too lenient in light of the purposes of [Washington's Sentencing Reform Act]"). The Hughes court reasoned that because prior convictions are already taken into account when fixing the standard range, they "alone can never be enough to warrant an exceptional sentence under Washington law"; that there must be an additional finding that the standard range is "clearly too lenient" due to "free crimes," the "egregious effects of the defendant's multiple offenses," or "the level of defendant's culpability resulting from the multiple offenses"; that the additional finding is factual; and that the additional finding is therefore "one that must be made by the jury."[22] This court's decision in State v. Van Buren[23] was overruled in part sub silentio.
¶ 17 In Hughes, the Washington Supreme Court considered whether Apprendi and Blakely's possible exception for prior convictions allowed a trial court to base an exceptional sentence on "rapid recidivism." Again noting that prior convictions alone will not support an exceptional sentence, the state high court held that additional factual findings are required, and that "those factual findings are for a jury."[24]
¶ 18 In Hughes, the Washington Supreme Court inquired whether an Apprendi-Blakely errornot submitting to the jury each fact needed to support a sentencecould ever be harmless. The court answered no.
¶ 19 In State v. Borboa,[25] this court addressed when a defendant waives his Sixth Amendment right to jury trial. We held that a defendant waives that right only if the record shows that he or she knowingly, voluntarily, and intelligently relinquished it.[26]
¶ 20 In State v. Hughes, the Washington Supreme Court considered what remedy should apply when an exceptional sentence is vacated because the jury did not find a fact essential to support it. The court concluded that in the absence of action by the legislature, the proper remedy is to remand for resentencing within the standard range. Insofar as State v. Harris[27] is inconsistent, it was necessarily overruled sub silentio.
¶ 21 In this case, the trial court based its exceptional sentences on Counts II and III on its own judge-made findings of free crimes and rapid recidivism. It erred by doing that, for only the jury could make such findings. Allen did not waive his right to have the jury make the findings, as the record does not show that he knew of or relinquished such right before sentencing. According *528 to Hughes, the error cannot be harmless, and the remedy is to resentence within the standard range. Accordingly, we vacate the sentences on Counts II and III with directions that Allen be resentenced within the standard range.
¶ 22 The convictions are affirmed. The standard-range sentences on Counts I and IV are affirmed. The exceptional sentences on Counts II and III are reversed and vacated, and the case is remanded for resentencing on those counts.
I concur: BRIDGEWATER, J.
QUINN-BRINTNALL, C.J. (concurring specially).
¶ 23 I concur with the majority opinion in its entirety. Under Blakely and Hughes, Allen's exceptional sentence must be reversed. I write separately, however, because contrary to our Supreme Court's holding in Hughes, this case conclusively illustrates why Blakely errors may be harmless in some circumstances: The exceptional sentence of 60 months on Count II violates Blakely but does not prejudice Allen in any way. A party lacks standing to raise an issue when they have not suffered a cognizable harm. Branson v. Port of Seattle, 152 Wash.2d 862, 876, 101 P.3d 67 (2004). The trial court imposed this 60-month exceptional sentence on Count II concurrently with Allen's 60-month standard range sentences on Counts I, III, and IV. Thus, the additional months improperly imposed on Count II did not result in Allen's additional confinement and the Blakely violation is unquestionably harmless. Because Allen presents no meritorious challenge to his convictions and the trial court's erroneous sentence on Count II does not harm Allen, the Blakely violation on Count II does not require resentencing.
¶ 24 In addition, I note that the State has not challenged Blakely's application to standard range sentences that become exceptional by virtue of the trial court's ruling that they are to be served consecutively. Division One has concluded that a defendant's jury trial right is not violated when an exceptional sentence is imposed in this manner. See State v. Kinney, 125 Wash.App. 778, 780-81, 106 P.3d 274, 276-77 (2005). This issue is currently before our Supreme Court,[28] but it was not raised here, and we do not decide it.
NOTES
[1] 1 Report of Proceedings (RP) at 80-81.
[2] See RCW 9.94A.589(1)(a).
[3] See RCW 9.94A.525(15).
[4] See RCW 9.94A.510-.515.
[5] See RCW 9.94A.535.
[6] 3 RP at 309. The current offenses occurred about four weeks after Allen's release from prison.
[7] 3 RP at 310.
[8] This was also more than three months after Allen filed his opening brief on appeal, and four days before the State filed its responsive brief on appeal.
[9] Supp. Clerk's Papers (CP) at 106-07.
[10] State v. Fernandez-Medina, 141 Wash.2d 448, 455-56, 6 P.3d 1150 (2000); State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978); State v. Bergeson, 64 Wash.App. 366, 369, 824 P.2d 515 (1992).
[11] State v. Southerland, 109 Wash.2d 389, 390, 745 P.2d 33 (1987).
[12] Compare RCW 9A.52.030 and RCW 9A.52.070.
[13] State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995); State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987).
[14] State v. Garrett, 124 Wash.2d 504, 520, 881 P.2d 185 (1994); State v. Ermert, 94 Wash.2d 839, 849, 621 P.2d 121 (1980).
[15] McFarland, 127 Wash.2d at 335, 899 P.2d 1251.
[16] 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[17] 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[18] Apprendi, 530 U.S. at 490, 120 S.Ct. 2348; see also Blakely, 124 S.Ct. at 2536; State v. Fero, 125 Wash.App. 84, 98, 104 P.3d 49, 57 (2005); State v. Borboa, 124 Wash.App. 779, 785, 102 P.3d 183 (2004).
[19] Blakely, 124 S.Ct. at 2537 (emphasis in original); Borboa, 124 Wash.App. at 786, 102 P.3d 183.
[20] Justice Clarence Thomas recently questioned the continuing viability of this possible exception for convictions. In a separate concurrence filed in Shepard v. United States, ___ U.S. ___, 125 S.Ct. 1254, 1264, 161 L.Ed.2d 205 (2005), he noted that Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), was the basis for any such exception; that Almendarez-Torres "has been eroded by this Court's subsequent Sixth Amendment jurisprudence"; and that "a majority of the Court now recognizes that Almendarez-Torres was wrongly decided." He concluded that "in an appropriate case, this Court should consider Almendarez-Torres' continuing viability."
[21] Borboa, 124 Wash.App. at 786-87, 102 P.3d 183.
[22] Hughes, 154 Wash.2d 118, ___-___, 110 P.3d 192 at 202 (Wash.2005).
[23] 123 Wash.App. 634, 98 P.3d 1235 (2004).
[24] Hughes, 154 Wash.2d 118, ___, 110 P.3d 192 at 204.
[25] 124 Wash.App. 779, 102 P.3d 183.
[26] Borboa, 124 Wash.App. at 792, 102 P.3d 183. Cf. Hughes, 154 Wash.2d 118, ___, 110 P.3d 192 at 198 (Blakely requires jury finding unless "the defendant waives his right to a jury finding").
[27] 123 Wash.App. 906, 99 P.3d 902 (2004).
[28] State v. Cubias, 119 Wash.App. 1018, 2003 WL 22701538, review granted, 152 Wash.2d 1013, 101 P.3d 108 (2004).