# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57910-3-II |
| Respondent, | |
| v. | |
| HEATHER MARIE AZEVEDO, | PUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Heather Azevedo was convicted in the superior court of burglary in the second degree. She appeals, arguing that (1) the prosecutor committed prejudicial misconduct in misstating the burden of proof in closing argument; (2) defense counsel was ineffective in failing to request jury instructions on the lesser included offense of criminal trespass, as well as for not objecting to the prosecutor's statements; and (3) cumulative error denied Azevedo a fair trial. In supplemental briefing, Azevedo also argues that the trial court erred by imposing the crime victim penalty assessment (VPA) and interest on restitution.

We hold that (1) even though the prosecutor's statements were improper, Azevedo waived her prosecutorial misconduct claim because she failed to object at trial; (2) Azevedo received effective assistance of counsel because criminal trespass is not a lesser included offense of burglary in the second degree; (3) there was no cumulative error; and (4) recent legislation impacts the trial court's imposition of the VPA and interest on restitution. Therefore, we affirm Azevedo's conviction, but we remand for the trial court to strike the VPA and reconsider whether to impose interest on restitution.

FACTS

I.    BACKGROUND

In April 2022, Margaret Sundstrom received a call from her neighbor, inquiring if anyone was supposed to be in Sundstrom's shop. Sundstrom walked over to the shop, which was near her house, to investigate. Before she could enter the building, a person came out of the shop, walked a couple feet, turned around, walked back into the shop, and then ran around the corner of the shop.

As Sundstrom got closer, a black car came around from the end of the building toward her. The car was moving fairly fast and startled her. Sundstrom described the car as a newer black sedan. At about ten feet away, she could not see the driver but described the passenger as a man, wearing a black jacket "or hoodie, and he had a black baseball cap on backwards," with some kind of beard. Rep. of Proc. (RP) (Aug. 23, 2022) at 137.

Sundstrom then entered the shop. The door frame was broken and the dead bolt was laying on the floor. Things in the shop were overturned and boxes had been tossed around and ripped open. She described finding a garment bag full of things "you don't put in a garment bag" next to the door. RP (Aug. 23, 2022) at 141. Items were missing, and the police never found any of the stolen property.

Sundstrom called the police and Deputy Matt Schlecht arrived on the scene. After speaking to Sundstrom and commencing the investigation, Schlecht located a vehicle nearby that matched the description of the vehicle Sundstrom had seen leaving her shop area. The car was parked in front of a trailer. Azevedo came out of the trailer while Schlecht was speaking to someone else outside.

Schlecht asked Azevedo who was driving the black sedan. Azevedo told him that a man named "Christian Riddle" had dropped off the car and left. RP (Aug. 24, 2022) at 204. Schlecht

explained to Azevedo that he believed the car had been involved in a burglary. Initially, Azevedo acted surprised. Azevedo then told him that she had gone into an abandoned house but the door was already open. Schlecht attempted to clarify whether Azevedo was referring to a house or a shop, but Azevedo seemed to be using the words interchangeably. Azevedo told him that "we" "just went in to look around because they had been looking at abandoned houses in the area because they were looking to move." RP (Aug. 24, 2022) at 209. Schlecht described Azevedo as "fidgety" during their interaction. RP (Aug. 24, 2022) at 205.

Azevedo ultimately agreed to go with Schlecht to see Sundstrom's shop. Before leaving, Schlecht photographed the vehicle, initially unaware that there was a man sitting in the passenger seat. The man was identified as Travis Pugh, and he was wearing a black hat on backwards with a head lamp, a black coat, and hooded sweat shirt. Schlecht took Pugh into custody. Sundstrom identified Pugh as the person who had been the passenger in the black vehicle.

II.    TRIAL

The State charged Azevedo and Pugh with burglary in the second degree. Azevedo was tried by a jury.

At trial, the court aired portions of Schlecht's body camera footage. In the video, Schlecht confirms with Azevedo and Pugh that they did not own the shop and they did not have permission to be in it. Also in the video, Azevedo admitted she was wrong and said she was sorry. Azevedo said she knew the shop had been broken into and that the door had been kicked in.

The jury was instructed on burglary in the second degree.[1]  The jury was also instructed that:

> A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein.  This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

Clerk's Papers (CP) at 22.  The instruction defining "knowledge" informed the jury that "[i]f a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact."  CP at 24.

During closing arguments, Azevedo's counsel argued that Azevedo had committed only criminal trespass, reasoning that while Azevedo knew she should not be in the shop, she only looked around and had no intent to commit any crime therein.  However, defense counsel did not request jury instructions on the lesser-included offense of criminal trespass.  The State argued she was guilty of burglary in the second degree, either as a principal or as an accomplice to Pugh.  In

---

[1] The instruction given read as follows: "A person commits the crime of burglary in the second degree when he or she enters or remains unlawfully in a building with intent to commit a crime against a person or property therein."  CP at 18.  The "to convict" instructions were as follows:

> To convict the defendant of the crime of burglary in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about April 13, 2022, the defendant or an accomplice entered or remained unlawfully in a building;
> (2) That the entering or remaining was with intent to commit a crime against a person or property therein; and
> (3) That this act occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if after weighing all of the evidence you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 19.

closing, the prosecutor made a remark relating to an inference about the knowledge element of second degree burglary:

> This instruction about knowledge, so you have knowledge with respect to a fact, circumstance, result, when they're aware of a fact. If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, you can infer that they had actual knowledge of what was going on; okay? So it's a reasonable person's standard when you're looking at this.

RP (Aug. 24, 2022) at 265. Then, in rebuttal, the prosecutor remarked:

> A person who enters or remains unlawfully in a building may be inferred to have acted with the intent to commit a crime against person or property. That's where you look at the circumstantial evidence that I want you to think about in just a moment.
> . . . [Azevedo] said in "her" mind. It's not her mind that we're judging this against. It's a reasonable person knowing what she knows, so it's a reasonable person's standard. A reasonable person after fully, fairly considering all the evidence you have an abiding belief in the truth of the charge.

RP (Aug. 24, 2022) at 283-84. Azevedo's counsel made no objection to either remark.

Azevedo was convicted as charged. The trial court ordered restitution in the amount of $447 for damage to the door. The court also imposed interest on the restitution and a $500 VPA. Azevedo was jointly and severally liable with Pugh for the restitution. Azevedo appeals.

ANALYSIS

I.    PROSECUTORIAL MISCONDUCT

Azevedo argues that the prosecutor committed misconduct by misstating the burden of proof of knowledge and intent in closing argument. We disagree and hold that although the comments were improper, they were not prejudicial.

A.    Legal Principles

We review allegations of prosecutorial misconduct under an abuse of discretion standard. *State v. Brett*, 126 Wn.2d 136, 174, 892 P.2d 29 (1995). To establish prosecutorial misconduct, Azevedo must prove that the State's remarks were both improper and prejudicial. *State v. Allen*,

182 Wn.2d 364, 373, 341 P.3d 268 (2015). This determination is made in the context of the entire record and the circumstances at trial. *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873, (2021). "Any allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). When the State's attorney misstates the law, this amounts to improper comments in the context of prosecutorial misconduct. *See Allen*, 182 Wn.2d at 373; *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008).

Once we find that a prosecuting attorney's statements were improper, we must then determine whether the defendant was prejudiced under one of two standards of review. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). "If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *Id.* However, if the defendant failed to object, "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id.* at 760-61. Under this heightened standard, the defendant must show that (1) "'no curative instruction would have obviated any prejudicial effect on the jury'" and (2) "the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id*. at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). Reviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill-intentioned and more on whether the resulting prejudice could have been cured. *Id*. at 762.

Here, there was no objection at trial and Azevedo challenges the prosecutor's remarks for the first time on appeal. Therefore, we proceed under the heightened standard to first consider waiver. In doing so, we ask whether the misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice.

B. The Prosecutor's Statements Were Improper, But Were Not So Flagrant and Ill-Intentioned that Resulting Prejudice Could Not Have Been Cured with an Instruction

The prosecutor's statements in closing describing a reasonable person standard were improper because they were a misstatement of the law. To find Azevedo guilty of burglary as a principal, the State was required to prove beyond a reasonable doubt that Azevedo had the "intent to commit a crime against persons or property . . . in a building." RCW 9A.52.030. Intent may be inferred by "any person who enters or remains unlawfully in a building." RCW 9A.52.040. The jury was so instructed in jury instruction 11. But the prosecutor imputed into this principle the reasonable person standard from instruction 13, when he argued that "[i]f a person has information that would lead a reasonable person in the same situation to believe that a fact exists, you can infer that they had actual knowledge of what was going on." RP (Aug. 24, 2022) at 265. Because burglary requires "intent to commit a crime against a person or property therein," an element subject to a permissible inference by mere presence in a building as set forth in instruction 11, the prosecutor's comment on the reasonable person standard was a misstatement of the law. RCW 9A.52.040.

In rebuttal, the prosecutor, conflating the element requiring the jury to find beyond a reasonable doubt that Acevedo had intent to commit a crime within the building with the reasonable person inference of knowledge, remarked:

> A person who enters or remains unlawfully in a building may be inferred to have acted with the intent to commit a crime against person or property. *That's where*

7

> *you look at the circumstantial evidence that I want you to think about in just a moment.*
>
> *. . . [Azevedo] said in "her" mind. It's not her mind that we're judging this against. It's a reasonable person knowing what she knows, so it's a reasonable person's standard. A reasonable person after fully, fairly considering all the evidence you have an abiding belief in the truth of the charge.*

RP (Aug. 24, 2022) at 283-84 (emphasis added). This was an obvious misstatement of the law.

But when considering the two comments in the context of the entire argument, the comments were not so flagrant and ill-intentioned that they could not have been cured with an instruction. Azevedo asserts the prosecutor's statements are prejudicial for the same reason the prosecutor's remarks in *Allen*, 182 Wn.2d 364, were prejudicial. In that case, the prosecutor repeatedly told the jury it could convict Allen using the "should have known standard," which was a misstatement of applicable law. *Allen*, 182 Wn.2d at 374. This misstatement was reinforced multiple times throughout the trial, including through the prosecutor's use of PowerPoint slides. *Id*. at 376-77. The *Allen* court held that the prosecutor's repeated use of the incorrect standard was prejudicial. *Id*. at 376-80.

Here, unlike *Allen*, an improper argument was not woven throughout the prosecutor's argument. Rather, there were a couple misstatements. They were not reinforced repeatedly throughout closing arguments as was the case in *Allen*. *Id*. at 376-77. Also, the focus of this inquiry is whether the resulting prejudice could have been cured by an instruction. *Emery*, 174 Wn.2d at 762. Any misstatements could have easily been cured, such as by reminding the jury of the knowledge instruction or striking the comment. Therefore, when considered within the context of the entirety of the argument, the prosecutor's conduct was not so flagrant and ill-intentioned that no curative instruction would have obviated any resulting prejudicial effect on the jury. Azevedo waived this issue by not objecting.

8

II.     INEFFECTIVE ASSISTANCE OF COUNSEL

Azevedo argues that her conviction must be reversed because she received ineffective assistance of counsel when her lawyer failed to request jury instructions on the lesser included offense of criminal trespass in the first degree.  Alternatively, Azevedo argues that she received ineffective assistance when her counsel failed to object to the prosecutor's misstatements of the law.  We hold that failure to request the lesser instruction was not ineffective assistance of counsel.  We also hold that even if failing to object to the prosecutor's statements was deficient performance, there was no resulting prejudice because the other evidence at trial was so overwhelming that the trial outcome would not have changed.

A.     Legal Principles

We review ineffective assistance claims de novo.  *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017).  To prove ineffective assistance of counsel, Azevedo must show (1) counsel's performance was deficient and (2) the deficient performance prejudiced her.  *State v. Benn*, 120 Wn.2d 631, 663, 845 P.2d 289 (1993).  Counsel's performance is deficient when counsel's conduct "falls below a minimum objective standard of reasonable attorney conduct."  *Id*.  Prejudice is shown when "there is a probability that the outcome would be different but for the attorney's conduct."  *Id.* (emphasis omitted).

Courts engage in a strong presumption that counsel's representation was effective.  *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).  The burden is on an appellant alleging ineffective assistance of counsel to show deficient representation based on the record established at trial.  *Id*.  An appellant may "rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'"  *State v. Grier*,

171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

> B.      Defense Counsel was Not Ineffective for Failing to Request Lesser Included Offense Instruction

Where the claim of ineffective assistance is based on counsel's failure to request a particular jury instruction, the defendant must show (1) they were entitled to the instruction, (2) counsel's performance was deficient in failing to request it, and (3) the failure to request the instruction caused prejudice. *State v. Classen*, 4 Wn. App. 2d 520, 539-40, 422 P.3d 489 (2018). To demonstrate she was entitled to a lesser included offense instruction, Azevedo must make two showings. First, she must show that each element of the lesser offense is a necessary element of the charged offense ("the legal prong"). *State v. Allen*, 127 Wn. App. 945, 950, 113 P.3d 523 (2005). Second, she must show that in taking the evidence in the light most favorable to her, a jury could find that she committed the lesser offense instead of the charged offense ("the factual prong"). *Id*. Here, the State takes issue with "the legal prong," arguing that criminal trespass in the first degree is not a lesser included offense of burglary in the second degree. We agree with the State.

In this case, Azevedo's conviction is for burglary in the second degree. Burglary in the second degree is committed if a person "with intent to commit a crime against a person or property therein, . . . enters or remains unlawfully in a building." RCW 9A.52.030. The lesser offense Azevedo requests is criminal trespass, which is committed if a person "knowingly enters or remains unlawfully in a building." RCW 9A.52.070.

Criminal trespass is not a lesser included offense of burglary in the second degree. Knowledge of the unlawfulness of entering or remaining, as is required for criminal trespass, is not a statutory element of second degree burglary, which requires a mens rea element by requiring

10

proof of intent to commit a crime. RCW 9A.52.030; RCW 9A.52.070. No additional mens rea requirement impliedly exists: the intent required in burglary is simply the intent to commit any crime against a person or property inside the burglarized premise. *State v. Moreno*, 198 Wn.2d 737, 745, 499 P.3d 198 (2021). In fact, for any burglary charge, if an accused enters or remains unlawfully, a permissible inference arises that the accused acted with the intent to commit a crime unless other evidence is presented. RCW 9A.52.040; *see also Moreno*, 198 Wn.2d at 746. This inference is permitted without requiring that the defendant know their entering or remaining was unlawful. *Moreno*, 198 Wn.2d at 746.

Importantly, criminal trespass is the only crime in chapter 9A.52 RCW that contains statutorily provided defenses. One such defense is that the accused reasonably believed that the owner of the premises would have licensed him to enter or remain, which is directly related to the element of criminal trespass that the defendant "know" that their entering or remaining is unlawful. *See* RCW 9A.52.070(1). If the defendant has a reasonable belief that their entering or remaining was lawful, criminal trespass is excused because they lacked knowledge of the unlawfulness. But, if that defense were to apply to burglary in the second degree, it could support the conclusion that knowledge of unlawfully entering or remaining is also an essential element of burglary. This is not consistent with the "intent to commit a crime" *mens rea* element for burglary in the second degree.

Courts have previously implied mens rea elements to strict liability criminal statutes that otherwise have no mental state. But this is typically done to avoid criminalizing otherwise innocent conduct in possible violation of due process principles. *See, e.g.*, *State v. Williams*, 158 Wn.2d 904, 908-16, 148 P.3d 993 (2006) (reading in a mens rea requirement to unlawful possession of a firearm pursuant to RCW 9.41.190(1)); *State v. Anderson*, 141 Wn.2d 357, 360-

67, 5 P.3d 1247 (2000) (same for RCW 9.41.040). The need does not arise here because burglary in the second degree statutorily provides a requirement of proof of an intent to commit a crime therein; it does not also require knowledge that the entry or remaining be unlawful. Implying an additional mens rea element is not necessary to avoid a due process violation; we do not imply an additional mens rea here. Knowledge of the unlawfulness of entering or remaining, as is required for criminal trespass, is not an element of burglary in the second degree. Criminal trespass is not a lesser included offense of burglary in the second degree.

For the aforementioned reasons, Azevedo was not entitled to a lesser instruction on criminal trespass. Because Azevedo was not entitled to this instruction, defense counsel's failure to request the instruction was not deficient performance. We hold that Azevedo has not shown that she received ineffective assistance of counsel.

C.     Failure to Object to Prosecutor's Statements Did Not Result in Ineffective Assistance of Counsel

Even assuming it was deficient performance by defense counsel to fail to object to the State's statements, the failure to object was not prejudicial. There was overwhelming evidence that Azevedo committed the burglary, such that objection to the comments would not have changed the outcome of the trial. Azevedo admitted to knowing the shop was broken into and admits she was in the shop. There was a collection of goods in the garment bag, presumably placed for retrieval by Azevedo and Pugh. Sundstrom saw someone fleeing from the shop and a car coming out from behind the shop. Sundstrom identified the driver as Pugh, who was later found in the same car outside of a trailer that Azevedo exited. Finally, Azevedo admitted she did wrong and apologized. While none of this evidence is independently conclusive, it is nevertheless overwhelming evidence such that the prosecutor's comments did not prejudice Azevedo.

12

Because an objection would not have changed the outcome of the trial, Azevedo cannot show prejudice. We hold that defense counsel was not ineffective for failing to object to the prosecutor's statements.

III.     CUMULATIVE ERROR

Azevedo argues that cumulative error denied her a fair trial. "The cumulative error doctrine applies where a combination of trial errors denies the accused of a fair trial, even where any one of the errors, taken individually, would be harmless." *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018). When, under the totality of the circumstances, it is shown that the accumulation of errors substantially prejudiced the defendant and denied him a fair trial, reversal is required. *Id*.

The cumulative error doctrine does not warrant reversal in this case. The application of that doctrine is limited to cases where there have been several trial errors. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000); *see, e.g.*, *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984); *State v. Badda*, 63 Wn.2d 176, 183, 385 P.2d 859 (1963). Here, there is no accumulation of errors to merit application of the doctrine. There was no error in defense counsel's failure to request a lesser instruction because Azevedo was not entitled to that instruction. And, assuming without deciding that the prosecutor's comments were improper, we have already concluded that those comments were not prejudicial. Based thereon, there can be no cumulative effect of errors which deprived Azevedo of a fair trial.

IV.     CRIME VICTIM PENALTY ASSESSMENT AND INTEREST ON RESTITUTION

In her supplemental brief, Azevedo argues that the trial court erred in imposing the VPA and interest on restitution.

RCW 7.68.035, which imposes a VPA fee "for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor," was amended, requiring waiver of the fee if the superior court finds that "the defendant, at the time of sentencing" was indigent. LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(1), (4)-(5)(b). The amendment is applicable to this case because it was pending appeal when the new statute became effective. *State v. Wemhoff*, 24 Wn. App. 2d 198, 202, 519 P.3d 297 (2022). The trial court determined that Azevedo was indigent. Therefore, the trial court should strike the VPA.

In addition to the VPA, the trial court ordered Azevedo to pay $447 in restitution and ordered interest to accrue on that restitution. At the time, the law required that interest be imposed on restitution, but this statute has since been amended. *See* former RCW 10.82.090 (2018); LAWS OF 2022, ch. 260, § 12. The statute now allows the court to refrain from imposing interest on any restitution the court orders, considering various factors, such as "[w]hether the offender is indigent as defined in RCW 10.101.010(3) or general rule 34." RCW 10.82.090(2). This is permissive, and is not required. RCW 10.82.090(1), (2). Because the court found Azevedo indigent, we remand for the court to reconsider the imposition of interest on restitution.

CONCLUSION

We affirm Azevedo's conviction, but we remand for the trial court to strike the VPA and reconsider whether to impose interest on restitution.

_____
Veljacic, A.C.J.

We concur:

_____
Maxa, J.

_____
Lee, J.