**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 85838-6-I |
| Respondent, | |
| v. | DIVISION ONE |
| GERARDO ELIECER MONGE, | UNPUBLISHED OPINION |
| Appellant. | |

BIRK, J. — A jury found Gerardo Monge guilty of rape of a child in the second degree, rape of a child in the third degree, and incest in the first degree. On appeal, Monge challenges the imposition of community custody conditions, restitution interest, and the victim penalty assessment (VPA). He also challenges a clerical error misstating the date he committed count 2 on his judgement and sentence. We remand for the trial court to fix the clerical error and strike the VPA. Otherwise, we affirm Monge's community custody conditions or hold his challenges are not ripe for review.

I

On August 17, 2023, the State charged Monge by information with rape of a child in the second degree, rape of a child in the third degree, and incest in the third degree. According to the State, Monge had been sexually assaulting his stepdaughter, N.H., from November 20, 2015 to June 22, 2020.

At trial, Monge's wife testified that, up until the point of trial, Monge had continued to put money into her bank account and paid her bills. Monge testified that he was a permanent employee of T-Mobile until 2023 when, "due to the problems [he] was having and [his] inability to go to the office regarding this case [he] had to accept a severance package." The jury found Monge guilty on all counts.

At sentencing on September 29, 2023, the court sentenced Monge to an indeterminate sentence of 194 months to life on the count of rape of a child in the second degree and concurrent determinate sentences on the other two counts. The court also ordered standard and special community custody conditions. This court's record does not include the sentencing brief in which Monge challenged the State's proposed community custody conditions, restitution interest, or the VPA, and he did not object to them at the sentencing hearing. The court ordered restitution in the amount of $7,364.06. The court neither explicitly ordered nor waived interest on restitution, setting a date in the future to determine restitution further for any unknown expenses. The court also ordered the $500 VPA.

On October 3, 2023, Monge moved to be found indigent and reported owning a house worth $950,000 with a remaining mortgage balance of $380,000. Monge reported having $75,000 in a retirement account. He reported no longer having an income and that he had given all his vehicles to his wife. Monge stated, "My wife plans to divorce me while I am in prison. I do not expect the Court to award me much from our estate." The court denied Monge's indigency motion, finding that he "owns real estate of significant value." On November 8, 2023,

2

Monge appealed. On March 13, 2024, the court found Monge indigent and appointed public appellate counsel.

II

Monge challenges four community custody conditions. We review de novo whether the trial court lacks statutory authority under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, to impose a particular community custody condition. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). Otherwise, "[t]he imposition of crime-related prohibitions is generally reviewed for abuse of discretion." Id. "A court abuses its discretion if a condition is either unconstitutional or manifestly unreasonable." State v. Lee, 12 Wn. App. 2d 378, 401, 460 P.3d 701 (2020). For example, a condition is manifestly unreasonable when it does not relate to the defendant's underlying motive in committing the offense and the condition does not decrease the likelihood the defendant will commit the offense again. See State v. Letourneau, 100 Wn. App. 424, 435, 997 P.2d 436 (2000) ("[T]here is no showing that Letourneau's motivation for telling her story to the media is connected with a desire for financial gain—and that is what the trial court prohibited.").

A

Monge's community custody condition 3 prohibits him from "possess[ing] or consum[ing] controlled substances except pursuant to lawfully issued prescriptions." Monge asserts the trial court was not statutorily authorized to prohibit the use of authorized medical cannabis.

3

Monge challenges this condition for the first time on appeal. "Appellate review normally does not extend to arguments not raised in the trial court." State v. Casimiro, 8 Wn. App. 2d 245, 249, 438 P.3d 137 (2019) (citing RAP 2.5(a)). "[F]or an objection to a community custody condition to be entitled to review for the first time on appeal, (1) it must be manifest constitutional error or a sentencing condition that . . . is 'illegal or erroneous' as a matter of law, and (2) it must be ripe." State v. Peters, 10 Wn. App. 2d 574, 583, 455 P.3d 141 (2019) (quoting State v. Blazina, 182 Wn.2d 827, 833, 344 P.3d 680 (2015)). "If it is ineligible for review for one reason, we need not consider the other." Id. at 583.

Monge argues that "the trial court failed to include an exception for authorized use of medical cannabis." Monge does not assert imposing the condition is a constitutional error that affects his rights. See State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995) ("[T]he defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error 'manifest.' ").

Neither does Monge establish that the condition is illegal or erroneous as a matter of law. In Blazina, our Supreme Court recognized that "unpreserved sentencing errors 'may be raised for the first time on appeal because sentencing can implicate fundamental principles of due process if the sentence is based on information that is false, lacks a minimum indicia of reliability, or is unsupported in the record.' " 182 Wn.2d at 833 (quoting State v. Jones, 182 Wn.2d 1, 6, 338 P.3d 278 (2014)). Review of such errors has been held justified "because the error, if

4

permitted to stand, would create inconsistent sentences for the same crime and because some defendants would receive unjust punishment simply because [their] attorney failed to object." Id. at 834. Here, Monge does not point to any evidence the condition is false, lacking reliability, or unsupported by the record. Neither does Monge assert that the condition is vague, that imposing the condition on him creates inconsistent sentences for similar offenders, or that he received an unjust sentence because his attorney failed to object. Because he does not show how the trial court's imposition of the condition is manifest constitutional error or illegal or erroneous as a matter of law, we conclude Monge's claim is not preserved for review.

Even assuming Monge can challenge this condition on this basis for the first time on review, existing case law establishes that the condition was statutorily authorized. Monge cites RCW 69.51A.030(2)(a), allowing a health care professional to authorize the medical use of cannabis, to argue that "[i]t would be absurd for the legislature to authorize an exception for the lawful use of more serious controlled substances but no corollary exception for cannabis." .

Unless the trial court waives the condition, community custody conditions must require an offender to "[r]efrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions." RCW 9.94A.703(2)(c). "The Washington State Medical Use of Cannabis Act[, ch. 69.51A RCW,] did not implicitly or explicitly repeal the statutory classification of [cannabis] as a schedule I controlled substance." State v. Houck, 9 Wn. App. 2d 636, 646-47, 446 P.3d 646 (2019). "Doctors are prohibited from issuing prescriptions for

5

medical [cannabis] and are merely allowed to issue an 'authorization' for medical [cannabis] use." Id. at 647; RCW 69.51A.030(2)(a). The Medical Use of Cannabis Act "does not supersede community custody conditions that trial courts 'shall order' under RCW 9.94A.703(2)." Id. at 650. The condition preventing Monge from "consum[ing] controlled substances except pursuant to lawfully issued prescriptions" is unambiguously consistent with the community custody and medical cannabis statutes. See State v. Ervin, 169 Wn.2d 815, 823-24, 239 P.3d 354 (2010) (we interpret ambiguous statutory language to avoid absurd results); State v. Wilson, 125 Wn.2d 212, 217, 883 P.2d 320 (1994) ("Plain language does not require construction."). The trial court did not err in imposing this condition.

B

Monge challenges as unconstitutionally vague the condition that "[t]he Defendant shall . . . [r]emain within geographic boundaries, as set forth in writing by the Department of Correction [DOC] Officer or as set forth with [the Stay Out of Drug Area] SODA order."

Monge posits a similar argument to the one this court addressed in State v. Lundstrom, holding that a condition that is the same as the one Monge challenges is not unconstitutionally vague. ___ Wn. App. 2d ___, 572 P.3d 1243, 1244-45 (2025). There, this court held a community custody condition is not vague when a person of ordinary intelligence can understand from context what the condition proscribes. Id. at 1245. We identified that the legislature has required the sentencing court to " 'comply with any conditions imposed by [DOC] under RCW 9.94A.704.' " Id. (alteration in original) (quoting RCW 9.94A.703(1)(b)). We

similarly identified that the legislature requires the DOC to instruct an offender to " '[r]emain within prescribed geographical boundaries.' " Lundstrom, 572 P.3d at 1247(alteration in original) (quoting RCW 9.94A.704(3)(b)). We determined that "a person of ordinary intelligence can understand what the condition proscribes. Its plain language requires that Lundstrom adhere to any geographic restrictions that a [DOC officer] or the SODA order 'set[s] forth in writing.' " Id. (last alteration in original).

Monge argues that the term "geographic boundaries" is similarly vague as the condition set forth in State v. Greenfield, 21 Wn. App. 2d 878, 508 P.3d 1029 (2022).[1] In Greenfield, the State conceded the condition was vague. 21 Wn. App. 2d at 889. Accepting the State's concession, the court said it was unconstitutionally vague because the condition was vague as imposed by the sentencing court and then subject to subjective interpretation by the CCO. Greenfield, 21 Wn. App. 2d at 889-890 (citing Irwin[2]). As in Lundstrom, the sentencing court here did not impose a vague condition as it was statutorily mandated to require Monge to comply with conditions imposed by the DOC, and the condition requires Monge to remain within geographic boundaries set forth in writing by the DOC.

Monge cites unpublished authority that relies on State v. Bahl, 164 Wn.2d 739, 193 P.3d 678 (2008), for the assertion that allowing a DOC officer to prescribe

---

[1] The condition in Greenfield was " '[s]tay out of drug areas, as defined in writing by the supervising [DOC] Officer.' " 21 Wn. App. 2d at 889.
[2] The condition in Irwin stated, "Do not frequent areas where minor children are known to congregate, as defined by the supervising [DOC officer]." 191 Wn. App. at 652.

geographic boundaries is vague. However, as discussed in Lundstrom, Bahl applies when the term at issue is unavoidably vague and cannot be cured "by allowing a [DOC officer] to provide their own subjective interpretation of the court's prohibition." See Lundstrom, 572 P.3d at 1246-47. Bahl and its progeny are inapplicable here because the court followed "its statutory obligation" to order Monge "to follow certain conditions that the legislature has authorized the DOC officer to impose." Id. at 1247.

Thus, we hold that the condition is not unconstitutionally vague and the court did not err in imposing it.

C

Monge challenges community custody special condition 5 requiring him to "[d]isclose sex offender status prior to any sexual contact" as unconstitutionally compelling speech. The State argues that the condition is not unconstitutional because our case law has supported SRA authorized infringements on speech that are crime related. We agree with the State.

Monge invokes his right to be free from compelled speech. The First Amendment of the United States Constitution and article I, section 5 of the Washington State constitution grant individuals a right to freedom of speech. Included in this right is the right to refrain from speaking. See State v. K.H.-H., 185 Wn.2d 745, 749, 374 P.3d 1141 (2016). However, " '[a]n offender's usual constitutional rights during community placement are subject to SRA-authorized infringements.' " Lee, 12 Wn. App. 2d at 402 (alteration in original) (quoting State v. Hearn, 131 Wn. App. 601, 607, 128 P.3d 139 (2006)). The SRA allows a

8

sentencing court to impose discretionary community custody conditions such as special condition 5 imposed in Monge's Judgement and Sentence.  Id.; RCW 9.94A.703(3)(d) ("Participate in rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community.").  This infringement on the right to be free from compelled speech is contingent on whether the compelled speech is crime related speech.  See Lee, 12 Wn. App. 2d at 401.  "There must be some evidence in the record connecting the community custody condition to the crime."  Id. at 401-02.

Monge argues that because his offense did not endanger consenting adults, the condition is not reasonably connected to the crime.  The jury found Monge guilty of rape of a child in the second degree, rape of a child in the third degree, and incest in the first degree.  All three of his convictions feature the essential element of sexual intercourse.  RCW 9A.44.076 ("when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old"); RCW 9A.44.079 ("when the person has sexual intercourse with another who is at least fourteen years old but less than sixteen years old"); RCW 9A.64.020(1) ("if he or she engages in sexual intercourse with a person whom he or she know to be related to him . . . as a descendant"[3]).  "Sexual intercourse" necessarily includes sexual contact.  RCW 9A.44.010(14)(c).  Thus, because his underlying convictions involve sexual contact, it is reasonable to require Monge to

---

[3] " 'Descendant' " includes stepchildren and adopted children under eighteen years of age."  RCW 9A.64.020(3)(a).

9

report sexual contact prior to it happening when his underlying conviction featured sexual contact. Therefore, the condition does not infringe upon his right to be free from compelled speech and is not unconstitutional.

Additionally, Monge urges us to require direct connections between the facts of the conviction and the condition. Monge is correct that there must be some connection between the conviction and the condition. However, "[t]he prohibited conduct need not be identical to the crime of conviction." State v. Nguyen, 191 Wn.2d 671, 684, 425 P.3d 847 (2018). Thus, as discussed above, the nature of Monge's convictions supports a connection with the condition.

Citing Lawrence v. Texas, 539 U.S. 558, 578, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003), Monge also asserts that special condition 5 violates his right to intimate association in the privacy of his home. As addressed in Lee, "a parolee's constitutional rights are subject to SRA-authorized infringements." 12 Wn. App. 2d at 403. As a parolee at the time of enforcement, Monge will be subject to SRA authorized infringements on his constitutional rights.

Therefore, we hold that special condition 5 does not unconstitutionally compel speech, and the trial court did not err in imposing the condition.

D

Monge challenges special condition 8 as violating his right to be free from "suspicionless, nexus-less" searches. Special condition 8 states,

The Defendant shall:

. . . .

> Consent to DOC home visits to monitor compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of the residence in which the offender lives or has exclusive/joint control/access.

The State argues that this condition is not ripe for review. We agree with the State.

A preenforcement challenge to a community custody condition is ripe for review if " 'the issues raised are primarily legal, do not require further factual development, and the challenged action is final.' " State v. Cates, 183 Wn.2d 531, 534, 354 P.3d 832 (2015) (internal quotation marks omitted) (quoting State v. Sanchez Valencia, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010)). In addition, "we must consider the hardship to the [defendant] if we refused to review [the] challenge on direct appeal." Sanchez Valencia, 169 Wn.2d at 789.

In Cates, our Supreme Court addressed the ripeness of a nearly identical community custody condition.[4] 183 Wn.2d at 533. Because it was undisputed that the challenge was primarily legal and the action was final, the court "consider[ed] only whether further factual development [wa]s required and the risk of hardship to Cates if [it] decline[d] to address the merits of his challenge at th[at] time." Id. at 534-35. The court held that the challenge was not ripe because the "condition as written does not authorize any searches, and . . . the State's authority is limited to that needed 'to monitor [Cates's] compliance with supervision.' " Id. at 535. The court further held that the risk of hardship was insufficient to warrant

---

[4] The condition in Cates read: " 'You must consent to [Department of Corrections] home visits to monitor your compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of the residence in which you live or have exclusive/joint control/access, to also include computers which you have access to.' " State v. Cates, 183 Wn.2d 531, 533, 354 P.3d 832 (2015)

preenforcement review because "[c]ompliance here does not require Cates to do, or refrain from doing, anything upon his release until the State requests and conducts a home visit." Id. at 536. At this time, Monge does not identify how complying with the condition requires him to do or refrain from doing anything. Thus, we hold that his challenge is not ripe.

In support of the unconstitutionality of the condition, Monge cites State v. Cornwell, 190 Wn.2d 296, 412 P.3d 1265 (2018). There, the court held suspicionless searches conducted in accordance with a community custody condition violated a parolee's privacy rights. Id. at 306. While Monge is correct about Cornwell's holding, Cornwell is distinguishable because the DOC officer did, in fact, conduct a suspicionless search. Id. Here, because no search has been conducted, Monge's challenge is analogous to Cates, where a search had not yet occurred. Cates, 183 Wn.2d at 535.

Monge argues alternatively that preenforcement review is nonetheless warranted because of the risk of hardship to him.[5] Monge argues that if he refuses to consent at the time of search, he will be subject to penalties, risk of immediate jail, and sanctions. Yet, similar to Cates where that was insufficient to support

---

[5] Monge cites an unpublished case, State v. Gililung, arguing that this court has held this condition to be ripe because the condition would create immediate hardship upon the defendant upon release from total confinement. No. 57466-7-II, slip op. at 32 (Wash. Ct. App. July 30, 2024) (unpublished portion), https://www.courts.wa.gov/opinions/pdf/D2%2057466-7-II%20Published%20Opinion.pdf. In Gililung, the court relied on the analysis of another unpublished case, State v. Franck, No. 51994-1-II (Wash. Ct. App. Feb. 4, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2051994-1-II%20Unpublished%20Opinion.pdf. However, as both cases are unpublished, they do not carry precedential weight. GR 14.1(a). Cates supplies the correct analysis.

review, Monge is not being asked to consent to home visits at this time. The hardships Monge identifies—money penalties, immediate arrest, and jail time—become hardships only at the time Monge refuses to consent, not while Monge is in total confinement. Thus, because Monge is not being asked to do or refrain from doing something presently, he fails to identify risks of hardship that support review of the merits at this time.

IV

Monge argues that the trial court abused its discretion in failing to consider whether restitution interest should be imposed on his judgement and sentence. The State argues that Monge waived this issue by failing to ask at the time of sentencing. We agree with the State.

"A defendant who makes no objection to the imposition of discretionary [legal financial obligations] LFOs at sentencing is not automatically entitled to review." Blazina, 182 Wn.2d at 832. An "appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). The restitution interest statute currently states,

> The court may elect not to impose interest on any restitution the court orders. Before determining not to impose interest on restitution, the court shall inquire into and consider the following factors: (a) Whether the offender is indigent as defined in RCW 10.01.160(3) or general rule 34; (b) the offender's available funds, as defined in RCW 10.101.010(2), and other liabilities including child support and other legal financial obligations; (c) whether the offender is homeless; and (d) whether the offender is mentally ill, as defined in RCW 71.24.025.

RCW 10.82.090(2). Here, Monge did not object to interest or ask to be found indigent at sentencing. Monge did not object to a proposed order setting restitution

for $7,364.06. The record indicates that this was for emergency room visits by N.H. Monge acknowledged that restitution was being proposed and examined it. In discussing the order of restitution, the following exchange occurred:

> [Defense Counsel:] . . . . So this money was all paid to the Crime Victim Compensation department. And so there's no way—
>
> Mr. Monge: It [INAUDIBLE].
>
> [Defense Counsel]: Pardon me?
>
> Mr. Monge: The dates?
>
> [Defense Counsel]: These are all August 11th and August 15th of 2020. And they're the hospital visit by [N.H.].
>
> Mr. Monge: Do you know whether she was going through my insurance?
>
> [Defense Counsel]: They didn't bill the insurance for that. The hospital bills directly to Crime Victim Compensation. I need you to sign there.
>
> And you're going to give your fingerprints.
>
> (Pause in proceedings)
>
> [Defense Counsel]: Your Honor, I have reviewed the judgment and sentence . . . and several documents. May I approach and I'll hand those up—
>
> The Court: umm-hmm.
>
> [Defense Counsel]: —so you can get started on that.

Consistent with the statutory authority the court had been granted nine months before sentencing in September 2023 to waive interest on restitution in its discretion, cf. State v. Roberts, 32 Wn. App. 2d 571, 614, 553 P.3d 1122 (2024) ("the statute that imposed interest on restitution was also amended, effective January 1, 2023"), aff'd, ___ Wn.3d ___, 572 P.3d 1191 (2025), the order setting

14

restitution included check boxes for waiving both restitution and interest on restitution, neither of which Monge raised.

Monge argues the court is required to conduct an inquiry into waiving restitution on its own initiative. RCW 10.82.090(2) "*allows* the court to refrain from imposing interest on any restitution the court orders." State v. Azevedo, 31 Wn. App. 2d 70, 88, 547 P.3d 287 (2024) (emphasis added). Refraining from imposing interest "is permissive, and is not required." Id. at 87 (citing RCW 10.82.090(1), (2)). "Prior to waiving interest on restitution, trial courts must consider numerous factors, such as the defendant's indigency, available funds, and mental illness," among other matters listed in the statute. State v. Roberts, 32 Wn. App. 2d at 614; RCW 10.82.090(2). However, the court is not required to determine whether or not to impose interest if the defendant is not found indigent at sentencing. Cf. id. (remanding for court to consider waiving interest on restitution when defendant was found indigent at sentencing). Therefore, the court was not required to sua sponte inquire into Monge's financial ability to pay the restitution interest, especially in light of his motion to be found indigent, which was denied on October 5, 2023. Monge declared a house valued at $950,000 and a retirement account valued at $75,000. The trial court did not find him indigent, identifying the value of his home as its primary reason. The court did not find Monge indigent until March 13, 2024, several months after sentencing.

Monge nonetheless asserts that the societal impacts of LFOs compel us to exercise our discretion to reach the issue even though Monge did not raise it in the trial court. As our Supreme Court noted in Blazina, LFO's do not raise a

15

constitutional question and thus do not fall into an exception to RAP 2.5(a). Blazina, 182 Wn.2d at 833. In Blazina, the court grappled with an LFO system out of step with society that had not been revisited by the legislature. Id. at 835-36. In 2022, the legislature amended the LFO statutes to provide an opportunity for courts to remove interest for indigent defendants. LAWS OF 2022, ch. 260, § 12. These provisions were available to Monge at his sentencing in September 2023. LAWS OF 2022, ch. 260 § 26; Roberts, 32 Wn. App. 2d at 614. Yet given the statutory components a court must consider, it would be difficult for this court to review the issue for the first time in the absence of a trial court record. The statute directs the court to, among considerations noted above, consider the offender's "other liabilities," "the victim's input, if any, as it relates to any financial hardship caused to the victim if interest is not imposed," and "any other information that the court believes, in the interest of justice, relates to not imposing interest on restitution." RCW 10.82.090(2). We have no record bearing on these components. Because Monge did not raise this statutory issue in the trial court, this issue is not appropriately raised for the first time on review.

We decline to reach whether the trial court erred in declining to waive restitution interest as Monge failed to preserve the issue for appeal and does not identify adequate reasons why we should reach the issue for the first time.

V

Relatedly, Monge argues his VPA should be waived because the sentencing court failed to inquire into whether he was indigent at the time of sentencing. The State argues that Monge failed to object to the imposition of the

16

VPA and thus Monge has waived it as an issue. After appealing, the sentencing court found Monge indigent for purposes of appealing his judgment and sentence. Given that the sentencing court has now found him indigent and we must separately remand to correct a scrivener's error, we remand to strike the VPA as a ministerial matter. Cf. State v. Ellis, 27 Wn. App 2d 1, 16-17, 530 P.3d 1048 (2023), review granted, 4 Wn.3d 1009, 564 P.2d 547 (2025).

VI

Lastly, Monge argues that the judgment and sentence improperly identifies January 1, 2014 as the "date of crime" for rape in the third degree conviction. The State concedes this is a clerical error. The State's second amended information lists the date range for Monge's conviction as between November 20, 2017, and November 19, 2019. We accept the State's concession and remand to the sentencing court to correct the date on the judgment and sentence as a ministerial matter. See State v. Ramos, 171 Wn.2d 46, 48, 246 P.3d 811 (2011).

VII

We remand to strike the VPA and correct the offense date for count 2 as ministerial matters. We otherwise affirm.

_____
Birk, J.

WE CONCUR:

_____          _____
Coburn, J.